Lora Belle JOHNSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7913.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1960.

Decided March 15, 1960.

W. H. McElwee, No. Wilkesboro, N. C. (McElwee & Ferree, No. Wilkesboro, N. C., on brief) for appellant.

Lafayette Williams, Asst. U. S. Atty., Greensboro, N. C. (James E. Holshouser, U. S. Atty., No. Wilkesboro, N. C., on brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and DALTON, District Judge.

SOPER, Circuit Judge.

This appeal is taken from a judgment based upon a general verdict of guilty on three counts of an indictment which charged, respectively, that Lora Belle Johnson during the months of August and September 1958 (1) removed distilled spirits on which the tax imposed by law had not been paid to a place other than an Internal Revenue Bonded Ware-

house and (2) concealed the same and (3) sold distilled spirits in containers which did not have the required stamps affixed thereto. Upon the rendition of the verdict a general sentence on all of the counts was imposed that the defendant pay a fine of $7500.00 and be imprisoned for a period of eighteen months. The prison sentence, however, was suspended and the defendant was placed on probation for a period of five years, subject to the special condition that the fine be paid by July 1, 1959. Subsequently the payment of the fine was suspended pending the appeal upon the deposit of $7500.00 in the registry of the court.

 The first contention of the appellant is that the District Judge erred in failing to grant a motion of the defendant for a directed verdict of not guilty on all the counts because of the insufficiency of the evidence. Attention is directed to two episodes, one on August 12, 1958, and the other on September 5, 1958, in each of which it was shown that the defendant sold a pint of illicit whisky to a Government undercover agent, pouring the whisky from an unstamped one-half gallon jar one-half full which she kept at her residence. The argument is that these transactions did not constitute either removal or concealment within the meaning of the statute. This contention cannot be sustained even if we restrict our view to these parts of the evidence. There is a tax upon distilled spirits, even if illicitly made, which attaches as soon as they come into existence. United States v. Thompson, D.C.W.D.Va., 189 F. 838, 839. The absence of the required revenue stamps on the containers is prima facie evidence that the spirits are illicit. Wolstein v. United States, 8 Cir., 80 F.2d 779, and Hester v. United States, 4 Cir., 284 F. 487; and the unexplained possession of illicit whisky is sufficient evidence to warrant a conviction of removal and concealment under the statute. Mills v. United States, 4 Cir., 194 F.2d 184; Johnson v. United States, 4 Cir., 199 F.2d 231; Crawford v. United States, 4 Cir., 160 F.2d 629; Turner v. United States, 4 Cir., 192 F.2d 41. Likewise there is no basis for the contention that the sales to the revenue agents fall within the exception of 26 U.S.C. § 5008, on which the third count of the indictment is based. This section makes it a crime to sell distilled spirits in containers which do not have the required stamps affixed thereto but exempts distilled spirits placed in containers for immediate consumption on the premises or for preparation for such consumption. This exception is designed to permit some freedom in the handling of distilled spirits in the course of a lawful business but obviously has no application to the facts of this case. Indeed, the evidence does not even show that the whisky was sold to the agents for consumption on the premises.[1]

There is, moreover, much additional evidence to show that the defendant was guilty of removal, of concealment, and of sale of illicit whisky, all three actions in violation of the federal statutes. Mrs. Johnson lived on a farm in Wilkes County, North Carolina, with her husband and her two sons, Fred Johnson and Robert Glen Johnson, Jr.; a third son, L. P. Johnson, lived nearby. On July 2, 1958, Government agents found a huge illicit still, capable of producing 335 gallons of whisky per day, located one-half mile from the Johnson house beside a much traveled one-lane dirt road which intersected a county-maintained gravel road at a point where the Johnson house was located. The dirt road was completely blocked at the site of the still by

1. Objection is made in defendant's brief that the judge gave no special instructions to the jury with regard to the removal and concealment counts of the indictment. The record shows, however, that the judge outlined the allegations of these counts in his charge and at the end requested the attorneys to state any objections that they had to the charge. Defendant's attorney made no objection in respect to these counts and offered no request for additional instructions in regard thereto.

a truck, on which was mounted an oil tank from which fuel was supplied to the still. The agents destroyed the still after marking certain valves in the equipment. On July 31, the agents discovered a larger still of similar construction, in which the marked valves had been incorporated, on the farm of one Albert Ralph Grey, five miles from the Johnson farm.

These circumstances and the subsequent discovery of other illicit stills in the same general area, together with information gained by undercover agents in visits to the Johnson house, led to the finding of five indictments, in addition to the indictment in the case at bar, for violation of the liquor laws against one or more members of the Johnson family and other persons in association with them. One indictment charged Mrs. Johnson, her three sons, James E. Ashley and Albert Ralph Grey with conspiring to defraud the United States of the tax on distilled spirits during the period from July 19, 1958 to April 16, 1959, by carrying on the business of distilling whisky as well as the business of wholesale and retail liquor dealers without paying the tax and with performing certain acts in furtherance of the conspiracy. In this case L. P. Johnson pleaded guilty, Ashley and Grey were convicted, but Robert Glen Johnson, Jr. and Mrs. Johnson were acquitted.

In a second indictment the three sons of Mrs. Johnson were charged with operating the illicit still discovered by revenue agents on July 2, 1958, and in this case L. P. Johnson pleaded guilty, Fred Johnson was found guilty, and Robert Glen Johnson, Jr. was acquitted.

In a third indictment Fred Johnson and Ashley were charged with the unlawful removal and concealment of distilled spirits on July 17, 1958, and both were convicted.

In a fourth indictment the three sons of Mrs. Johnson were charged with possessing and operating an illicit still on October 7, 1958, and in this case L. P.

Johnson pleaded guilty, Fred Johnson was found guilty, and Robert Glen Johnson, Jr. was acquitted.

In a fifth indictment Mrs. Johnson and two of her sons, Fred Johnson and Robert Glen Johnson, Jr., were charged with the removal, concealment and possession of nontax paid distilled spirits on September 24, 1958, and in this case the judge directed a verdict of acquittal for the defendants.

By consent these six cases were tried together and much evidence was given by Government witnesses tending to show not only that two of the sons of Mrs. Johnson, namely, L. P. Johnson and Fred Johnson,[2] were in the business of making and selling illicit whisky on a large scale but also that Mrs. Johnson was well aware of their activities, if indeed she did not have a part in them. Two undercover agents made a number of visits to the Johnson house in the summer of 1958 as prospective purchasers of moonshine whisky and became acquainted with the defendants. On July 9, they inquired of Mrs. Johnson as to the purchase of whisky and were told that none was available at the time but that it was planned to have some in the following week. Returning at 6:30 P.M. on July 16, they were told by Mrs. Johnson to wait until it was dark, and after a wait of seven hours they succeeded in buying six cases of whisky at $21.00 a case from Fred Johnson and Ashley. Additional purchases of thirteen cases, on July 19, for $273.00 and ten cases, on July 22, for $210.00 were made at the same place.

In August additional visits were made by the agents to the Johnson farm and talks were had with Mrs. Johnson and L. P. Johnson about the production of whisky, and the agents were shown the ruins of a still destroyed on July 22 and parts of another still that were kept in Mrs. Johnson's barn. On August 12, and again on September 5, Mrs. Johnson made the sales of the small quantities of whisky above referred to. From this re-

2. At the conclusion of the evidence at the trial, Fred Johnson changed his plea from not guilty to guilty in all of the cases in which he was indicted.

cital it is quite obvious there was abundant evidence to support the charges of removal, concealment, and sales of illicit whisky set forth in the three counts of the indictment against Mrs. Johnson.

■ It has been noticed that the District Judge directed a verdict of acquittal in favor of Mrs. Johnson and two of her sons, Fred Johnson and Robert Glen Johnson, Jr., on the charges of removal, concealment, and possession of non-tax paid whisky on September 24, 1958, set forth in the fifth indictment above described. On this account it is now contended that Mrs. Johnson was automatically acquitted also of the charges of removal and concealment in August and September 1958, contained in the indictment now before the court. Although the jury convicted Mrs. Johnson of the latter charges it is said that it is impossible to determine from the verdict whether the jury intended to convict the defendant of committing the offenses in August *or* September 1958 and therefore she must be held to have been exonerated by her acquittal of the same crime on September 24, 1958.

This contention must be overruled. The evidence offered by the Government to sustain the charges in the fifth indictment related to occurrences which took place on September 24, 1958, when the agents, having completed their investigation, went to the Johnson house armed with warrants of arrest and found three gallons of nontax paid whisky in the hall. At that time L. P. Johnson, who was not charged in the case, was present in the house. Fred Johnson was asleep in a bedroom, while Mrs. Johnson and her other son, Robert Glen Johnson, Jr., were absent. Under these circumstances the District Judge, before the argument to the jury took place, directed the attention of the jury specifically to the date of the arrest and explained that, in his view, the evidence was insufficient to sustain a verdict of guilty for violating the statutes on that date and directed a verdict of acquittal. Obviously there could have been no confusion in the jury's mind between this case and that upon which they found a verdict of guilty against Mrs. Johnson of the removal, concealment, and the sale of whisky in the case at bar. These offenses were proved by the testimony of the undercover agents to the purchase of whisky from Mrs. Johnson personally on August 12, and again on September 5, as above described, and this testimony was reinforced by the evidence herein outlined, which showed that Mrs. Johnson's knowledge of, if not complicity in violations of the liquor laws by members of her family in the vicinity of her residence.

The argument does show that the careless practice of drafting an indictment in general terms instead of naming the specific dates on which the offenses charged were committed cannot be approved, but it does not justify the acquittal of the defendant.

■ Finally, it is contended that the judge exceeded the limits of his power when he imposed upon the defendant a fine of $7500.00 applicable to all the counts of the indictment. Section 5632 of 26 U.S.C. provides for a fine of not more than $5,000.00 and imprisonment for not more than three years for the unlawful removal or concealment of distilled spirits, charged in counts one and two of the indictment; and § 5642 provides for a fine of not more than $1,-000.00 or imprisonment for not more than five years or both for violation of § 5008(b) by the unlawful sale of distilled spirits in unstamped packages, charged in the third count of the indictment. It is said that, under the facts of the pending case, removal and concealment constituted a single offense and hence the fine of $7500.00 exceeded the maximum fines that could have been imposed for the removal, concealment, and sales of distilled spirits charged in the three counts of the indictment. The decisions, however, are to the contrary. It is clearly established that the illegal removal and illegal concealment of distilled spirits are distinct offenses under the statutes and are separately punishable even when both actions are proved

by the same testimony. Widener v. Harris, 4 Cir., 60 F.2d 956; Rosser v. United States, 4 Cir., 75 F.2d 498, certiorari denied 294 U.S. 730, 55 S.Ct. 638, 79 L.Ed. 1259; Tiller v. Hudspeth, 10 Cir., 131 F.2d 188. The principle is set forth in Albrecht v. United States, 273 U.S. 1, 11, 47 S.Ct. 250, 253, 71 L.Ed. 505, as follows:

"There is a claim of violation of the Fifth Amendment by the imposition of double punishment. This contention rests upon the following facts. Of the nine counts in the information, four charge illegal possession of liquor, four illegal sale, and one maintaining a common nuisance. The contention is that there was double punishment because the liquor which the defendants were convicted for having sold is the same that they were convicted of having possessed. But possession and selling are distinct offenses. One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession, or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has the power to prohibit and punishing also the completed transaction."

Cf. Mathis v. United States, 6 Cir., 200 F.2d 697.

We do not meet in this case the situation which confronted the Supreme Court in Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, and Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407. In the first of these cases the question was whether Congress authorized the imposition of cumulative penalties for parts of the same criminal transaction when, in 1937, it amended the Federal Bank Robbery Act, 18 U.S.C.A. § 2113 by making it a separate offense to enter a bank with intent to rob. The second case involved a similar question under the same statute as to whether one guilty of robbing a bank could be punished both for the robbery and also for receiving the stolen property, which had also been made a crime by an amendment to the statute in 1940. It was held in each case that the sentence authorized by the amendment for the lesser offense was not designed to increase the punishment for robbery but only to provide punishment for one who did not participate in that crime but was guilty of the associated offense. The Court, however, pointed out, particularly in Prince, 352 U.S. at page 325, 77 S.Ct. at page 405, that the question of interpretation there involved was a narrow one which dealt with a unique statute of limited purpose and hence should be differentiated from such cases as Albrecht v. United States, supra, dealing with similar problems in the same general field. It is clear that the pending case is governed by the Albrecht rule and not by subsequent decisions.

It is also well settled that the imposition of a general sentence on several counts of an indictment in excess of the punishment prescribed for any one of the offenses is valid if it does not exceed the aggregate of the permissible sentences on all of the counts. The question was specifically passed upon by this court, in 1924, in Neely v. United States, 4 Cir., 2 F.2d 849, where the authorities in support of the rule, beginning with Ex parte De Bara, 179 U.S. 316, 21 S.Ct. 110, 45 L.Ed. 207, were cited and the general sentence of the trial court was affirmed, which exceeded the maximum which could lawfully be imposed on a single count but was not greater than the aggregate permitted on the several counts.

Judge Rose, writing for this court, affirmed the judgment of the court below, but disapproved of the practice of imposing a general sentence in the following language (at page 853):

"Nevertheless, all things that are lawful are not expedient. We are persuaded that by far the better practice is for the trial court in its sentence expressly to apply the punishment it awards to the separate counts upon which the prisoners have been convicted, and to direct whether their punishment shall be served consecutively or concurrently. If this be done, a much simpler problem will be presented to the appellate court, in the event that in the trial below error has been committed as to the issue raised by some, but not by all, of the counts".

We are still in accord with this view and specifically call it to the attention of the trial courts in this circuit. The judgment of the District Court, however, is affirmed.

Affirmed.