UNITED STATES of America,
Plaintiff-Appellee,

v.

Angelo INCISO, Defendant-Appellant.

No. 13058.

United States Court of Appeals
Seventh Circuit.

June 30, 1961.

Rehearing Denied Aug. 17, 1961.

Before HASTINGS, Chief Judge, SCHNACKENBERG and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Defendant Angelo Inciso was charged in a 22-count indictment with the violation of Section 302(b) of the Labor Management Relations Act of 1947, 61 Stat. 157, 29 U.S.C.A. § 186(b) and 18 U.S. C.A. § 2(b).

Following an extended trial by jury and a verdict of guilty on all counts as charged in the indictment, defendant was adjudged to be guilty and sentence was imposed by the trial court. From this judgment defendant has appealed.

The errors relied on for reversal arise out of adverse rulings on various defense motions, rulings on evidence and instructions. The sufficiency of the evidence to prove the allegations of the indictment is not contested.

The relevant portions of the statutes above referred to are as follows:

Section 186(b) and (d), Title 29, U.S. C.A., reads:

"(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."

"(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdeameanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both."

Section 2(b), Title 18, U.S.C.A., reads:

"§ 2. Principals

\* \* \* \* \* \*

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. As amended Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717."

George F. Callaghan, Chicago, Ill., Melvin F. Wingersky, Marion, Ill., for appellant.

James P. O'Brien, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., John J. Quan, Robert F. Monaghan, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Count I of the indictment is typical of each one of the twenty-two counts returned October 23, 1956 and reads:

"1. That at all times hereinafter mentioned, United Industrial Workers of America, Amalgamated Local 286, (hereinafter referred to as Amalgamated Local 286) a labor organization maintaining its offices in Chicago, Illinois, was a representative of employees who were engaged in an industry affecting interstate commerce.

"2. That at all times hereinafter mentioned, Angelo Inciso, the defendant herein, was an officer and official of Amalgamated Local 286.

"3. That from on or about March 16, 1956, to and including on or about October 15, 1956, and periodically throughout such period of time at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, Angelo Inciso, defendant herein, did unlawfully, wilfully and knowingly cause Amalgamated Local 286 to receive and accept from Wisconsin Can Company, 5437 South Massasoit Avenue, Chicago, Illinois, an employer of said employees, engaged in an industry affecting commerce, a sum of money aggregating $2,390.80, more or less; in violation of Section 186(b), Title 29, United States Code."

Save for varying dates of alleged violations, different employers named in each count and various stated sums of money, the remaining twenty-one counts are otherwise unchanged throughout the indictment. As a part of its caption the indictment cites Title 18, U.S.C.A. § 2, supra.

The total amount of money defendant is charged in the twenty-two counts with causing Local 286 to receive and accept from the various employers, in violation of the statutes involved, is $420,267.76, as particularly set out in the table below.[1]

In substance, considering the evidence in the light most favorable to the Government, the record demonstrates that the following factual situation could have been found by the jury beyond a reasonable doubt. The twenty-two employers were industries engaged in interstate commerce; their employees were members of and represented by Local 286;

| Count | Amount | Employer Company | Period of Payments |
|---|---|---|---|
| I | $ 2,390.80 | Wisconsin Can Co. | 3–16–56—10–15–56 |
| II | 9,307.97 | Briskin Mfg. Co. | 6– 3–52— 9–21–53 |
| III | 9,169.09 | Illinois Coil Spring Co. | 8–17–53— 3–13–54 |
| IV | 22,166.50 | Chicago Pottery Co. | 10–27–54—12–13–55 |
| V | 811.90 | Munton Mfg. Co. | 2–11–55—11–10–55 |
| VI | 7,596.17 | Titan Abrasives Co. | 4–18–55—12–16–55 |
| VII | 1,874.45 | Armstrong Bray and Co. | 7–15–53—12–15–55 |
| VIII | 21,045.14 | Sheldon Machine Co. Inc. | 7–15–53— 7–15–54 |
| IX | 8,611.80 | Armstrong Bros. Tool Co. | 7–17–53— 7–15–54 |
| X | 3,019.80 | Johnston and Chapman Co. | 7– 9–53—12–15–55 |
| XI | 5,826.05 | Illinois Lock Co. | 12–16–54— 2– 9–56 |
| XII | 58,254.28 | Chicago Lock Co. | 5–21–52—12–20–55 |
| XIII | 29,761.65 | Duro Metal Products Co. | 7–24–53— 9–20–54 |
| XIV | 6,252.10 | Harris & Reed Mfg. Co. | 1–12–53—11–11–55 |
| XV | 13,394.35 | Precision Paper Tube Co. | 10–21–54— 1–10–56 |
| XVI | 60,161.80 | Dixie Cup Co. | 8–13–53—10–14–55 |
| XVII | 16,213.28 | A.B.T. Mfg. Corp. | 6–13–54—12–15–55 |
| XVIII | 6,054.99 | Navidico, Inc. | 1– 1–54—10–31–55 |
| XIX | 59,828.47 | National Video Corp. | 1– 1–54—12–31–55 |
| XX | 46,896.62 | Milled Screw Products Co. | 9– 1–52—12–31–55 |
| XXI | 10,866.00 | Mojonnier Dawson Co. | 3– 3–52—11–30–55 |
| XXII | 20,764.70 | Payson Mfg. Co. | 6–13–52—11–11–55 |
| Total | $420,267.76 | | |

negotiations were conducted with defendant and others on behalf of Local 286 and contracts resulted therefrom; they made periodic payments to Local 286 consisting of dues and insurance payments at the direction of defendant; and they kept records showing the breakdown of the payments to Local 286 into the two categories of insurance and dues.

There was evidence that defendant was the "boss" of Local 286 and exercised complete domination and control over it; he was in complete control over all negotiations with the employers; and he directed or controlled the arrangements leading to the payment by the employers of monthly dues of $3 per employee and additional monthly payments of from $5.15 to $6.15 per employee for insurance.

There was evidence that Local 286 recorded the receipt of such payments by the employers allocating a certain amount for dues and other amounts for insurance; these funds were placed in its general account and were not placed in a health and welfare trust fund; thereafter, it purchased insurance with such funds, except that it retained in its treasury the sum of $1, plus certain interest on the remainder, of each of such monthly insurance payments by the employers and did not purchase insurance with such retained amounts.

There was evidence that in late 1950 or early 1951 defendant had prepared an agreement concerning a proposed trust fund to be set up between the employers of members of Local 286 and Local 286 for health and welfare benefits, and this was the only way health and welfare payments could be made or received without violating the Taft-Hartley Act, but defendant abandoned such a plan.

## I.

By proper and timely motions defendant unsuccessfully challenged the validity of the indictment in the trial court.

He asserts that the indictment is fatally defective because it fails to charge

him as a "representative" under Section 186(b), supra, claiming that only "representatives" are inhibited thereunder. He contends that the indictment should have directly alleged such a representative capacity on defendant's part as to constitute an offense by him under the Act; else it falls short of the requirement of Section 2(b), supra, that the act caused to be done must be one "which if directly performed by him or another would be an offense against the United States."

Defendant further charges invalidity on the grounds that the indictment is vague, indefinite and uncertain; that it furnishes him with no information upon which he could predicate his defense; that such deficiencies amount to a violation of his constitutional rights under the Sixth Amendment; and that it runs afoul of the requirements of Rule 7, Federal Rules of Criminal Procedure, Title 18, U.S.C.A.[2]

It is agreed that the indictment does not charge defendant with receiving the money directly or with being a representative of the employees. Neither does it charge the various employers with a violation of the Act. The indictment here simply alleges in each count that defendant willfully and knowingly *caused a representative of employees, Local 286,* to receive money from the named employer of said employees engaged in an industry affecting commerce, in violation of law.

The Supreme Court in United States v. Ryan, 1956, 350 U.S. 299, 301, 76 S.Ct. 400, 402, 100 L.Ed. 335, in defining the word "representative" as used in Section 186(b), supra, said:

"The LMRA provides that the term 'representative' shall have 'the *same meaning as when used in the* National Labor Relations Act as amended by this Act.' § 501(3). The pertinent definition appears in § 2(4) of the NLRA: *'The term "representatives" includes* any in-

---

2. Rule 7 provides: "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * *"

dividual or *labor organization.*' 49 Stat. 449, 450, 29 U.S.C. §§ 151, 152(4)." (Emphasis added.)

██ The holding in Ryan has made it clear that it is a crime for a representative of employees, including labor organizations, to receive unlawful funds from employers. In the instant case, defendant by *causing* the crime to be committed by the union caused a crime to be committed by *another* as set forth in 18 U.S.C.A. § 2(b), as amended in 1951, and is punishable as a principal. Defendant is *not* charged as an aider and abettor under the preceding subsection, § 2(a). Thus, we find that defendant is clearly charged with causing the commission of an offense which would be and is a crime if directly performed by another, i. e., Local 286.

The reviser's notes on this subsection (b) of Section 2, Title 18, supra, are pertinent to this consideration:

"Section 2(b) is added to permit the deletion from many sections throughout the revision of such phrases as 'causes or procures.'

"The section as revised makes clear the legislative intent to punish as a principal not only one who directly commits an offense and one who 'aids, abets, counsels, commands, induces or procures' another to commit an offense, but also anyone who causes the doing of an act which if done by him directly would render him guilty of an offense against the United States.

"It removes all doubt that one who puts in motion or assists in the illegal enterprise or causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense.

"This accords with the following decisions: Rothenburg [Ruthenberg] v. United States, 1918, 38 S.Ct. 18 [168], 245 U.S. 480, 62 L.Ed. 414, and United States v. Hodorowicz, C.C.A.Ill.1939, 105 F.2d 218, certiorari denied 60 S.Ct. 108, 308 U.S. 584, 84 L.Ed. 489. United States v. Giles, 1937, 57 S.Ct. 340, 300 U.S. 41, 81 L.Ed. 493, rehearing denied 57 S.Ct. 505, 300 U.S. 687, 81 L.Ed. 888. 80th Congress House Report No. 304."

██ The courts have uniformly construed the word "cause" in harmony with the foregoing notes to mean a principal acting through an agent or one who procures or brings about the commission of a crime. One acting in such capacity is chargeable as a principal in the crime and punishable accordingly. United States v. Kenofskey, 1917, 243 U.S. 440, 443, 37 S.Ct. 438, 61 L.Ed. 836; United States v. Sheridan, 1946, 329 U.S. 379, 391, 67 S.Ct. 332, 91 L.Ed. 359; United States v. Leggett, 7 Cir., 1959, 269 F.2d 35, 37, certiorari denied 361 U.S. 901, 80 S.Ct. 209, 4 L.Ed.2d 156; Pereira v. United States, 5 Cir., 1953, 202 F.2d 830, 836–837, affirmed 1954, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435; Boushea v. United States, 8 Cir., 1949, 173 F.2d 131, 134.

We hold that by causing Local 286 to receive money in violation of Section 186(b), supra, defendant was properly charged as a principal under Section 2(b), Title 18, supra.

██ Further, we find no merit in the contentions of invalidity of the indictment on the other foregoing grounds asserted by defendant. The indictment is a "plain, concise and definite written statement of the essential facts constituting the offense charged" and adequately apprised defendant of the charges against him. It fully meets the standards of sufficiency laid down by the courts in a long line of decisions. United States v. Debrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92; Boyce Motor Lines v. United States, 1952, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367; Glasser v. United States, 1942, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680; Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Ansani, 7 Cir., 1957, 240 F.2d

216, 223; Jelke v. United States, 7 Cir., 1918, 255 F. 264.

We hold that the trial court did not err in sustaining the validity of the indictment.

## II.

Defendant charges prejudicial error on the part of the trial court in permitting the Government, as a part of its case-in-chief and over defendant's objections, to read into evidence as admissions against interest certain excerpts from Government Exhibit 23–5. This exhibit was a transcript of testimony given by defendant Inciso when he was a witness before the United States Senate Committee on Labor and Public Welfare in July, November or December, 1955. The testimony was given before the Subcommittee on Welfare and Pension Funds, of which Senator Paul H. Douglas was chairman.

Senator Douglas, called as a witness by the Government in the instant case, testified in substance that he presided at the Senate Subcommittee hearings; that defendant was the same Angelo Inciso who had testified before such subcommittee and the transcript of his testimony was a true and correct reproduction of what Inciso said at the hearings.

Testimony of the reporter who took the notes at the hearing and made the transcript was stipulated to the effect that the transcript was a true and correct reproduction of the stenographic notes taken at the time of the testimony. Accordingly, the document was introduced and received into evidence. A proper foundation was laid for such introduction of this testimony if it was otherwise shown to be relevant and material.

Defendant did not testify in the trial below and rested his case without the introduction of any evidence on his own behalf. He contends that the introduction of the Senate testimony was for the purpose of impeaching and degrading him in the eyes of the jury.

Defendant complains that the excerpts of his testimony before the Senate Subcommittee which were read to the jury were irrelevant and immaterial and never connected to the indictment or the issues on trial. In any event, he urges that they were not admissible for any purpose.

The issues in this trial concern the receipt of *non-dues* payments by the union. Aside from this challenged testimony, the Government had previously established by proper evidence the factual background set out earlier herein. That part of defendant's Senate testimony read to the jury disclosed he testified that *all* money the union received was dues; that the dues were raised from $3.15 to $9.15 per month and were checked off from the members' pay; that there was *never* any discussion about insurance with some thirty employers; that he knew something about the Taft-Hartley Act; that there was *no violation in the way his union handled the insurance money because it was all dues as such;* that he notified the employers that dues had been changed to $9.15; that all the money that came into the union was for dues (except certain additional payments for employees' dependents insurance); that there were some thirty odd employers and that he told them the payments were all dues and that "we are going to give the people insurance, but that is our business, as far as you are concerned it is dues. You take it out of the people's pay and send it to us as dues."

It is true that none of the employers named in the indictment were mentioned by name in the Senate testimony. However, it is clear to us that defendant was speaking about thirty odd employers and that twenty-two were named in the indictment and testified below. It is quite apparent that defendant was speaking about money for insurance paid into the union when he referred to all of it as dues. Defendant was attempting to demonstrate that the union was not violating the law because all of the money the union received was dues taken from the employees' pay.

This testimony, plus his further statement that he never discussed insurance with the employers, was read to the jury and could reasonably have been found to

be false. The testimony of the employers in the trial was to the contrary. Furthermore, two months after testifying before the Senate Subcommittee, defendant sent a letter to Wisconsin Can Company, wherein he told it to pay to the union dues of $3 and insurance of $6.15 per man per month. Subsequently, the union received such payments from this employer, and these insurance payments are the subject of Count I of the indictment.

█ Since we read defendant's Senate testimony as exculpatory of the facts charged in the indictment, and since it was by other separate evidence shown to be untrue, such testimony was admissible as a false exculpatory statement. United States v. Vittoria, 7 Cir., 1960, 284 F.2d 451, 453; United States v. Farina, 2 Cir., 1954, 218 F.2d 62, 63.

But if we assume that the Government failed to demonstrate that defendant in his Senate testimony was referring to the twenty-two employers named in the indictment, the statement nevertheless was relevant and admissible as proof of defendant's awareness of the prohibitions of Sections 186(b) and (d).

██ Knowledge or awareness of the law is generally irrelevant in proving *mens rea* in major felony convictions. Further, in certain "public policy" crimes, strict liability is imposed. However, in many such crimes, the sanction is limited to a fine or short jail term. Here, on the contrary, a fine of $10,000 per violation and a year's imprisonment can be imposed for disregarding the provisions of Section 186(b) and (d). We hold that the term "willfully violates" in Section 186(d) contemplates proof of an awareness of the restrictions of that section or a reckless disregard for that section.

Defendant's Senate testimony served this purpose—it demonstrated his aware-ness of the necessity of receiving funds solely upon the conditions of Section 186(c).[3] Such testimony, offered by the Government in its case-in-chief, was relevant and material on the question of guilty knowledge, intent and willfulness. It demonstrated that defendant had knowledge of the pertinent provisions of the Taft-Hartley Act for violations of which he was later indicted. It was relevant to the issue that when he caused the violation to occur he did so knowingly and willfully.

Requiring proof of awareness of the restrictions contained in Section 186(b) and (d) is consistent with the Government's repeated explanation why the employers named in the indictment were not charged with a similar violation. In its brief, the Government stated:

"[T]he reason for the defendant alone being charged is obvious. The statute requires that the action of the defendant be wilful. Defense counsel's cross-examination of company officials effectively scotched this complaint against the employers as each denied that they knew this was wrong * * *."

Earlier, in closing argument before the jury, Government counsel further indicated its theory of Section 186(b) and (d):

"[Government counsel]: Now [defense counsel] refers to the fact that none of the employers are on trial here. [Defense counsel] cleared that up for you when he asked them whether or not they had any intent to violate the statute. Did they know that what they were doing was wrong? They answered him, 'No, I didn't.'

"He wants to know, why aren't they here? Well, that is the reason they are not here. That is why they

---

3. Section 186(c), 29 U.S.C.A., in relevant part provides:

"(c) The provisions of this section shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclu-sive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents) * * *."

are not charged. Mr. Inciso is the man who knew and he knew from the beginning when he started this, and we will ask you to read when you go to the jury room at the very beginning of it, his trust agreement that he wanted to set up. He knew that this was wrong."

Since the statement was admissible on either of the grounds indicated, it could not constitute prejudicial error to defendant.

### III.

Defendant has asserted that a number of additional errors require the reversal of his conviction. Each may be treated summarily.

■ First, he asserts that the proof shows only a single punishable event under Section 186(b) and (d)—a course of conduct by defendant that caused the receipt by Local 286 of non-dues payments from twenty-two employers. However, under Section 186(b) the willful receipt from each employer (except under the specific circumstances of Section 186(c) which includes approved insurance plans) is made unlawful. Korholz v. United States, 10 Cir., 1959, 269 F.2d 897, certiorari denied 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352. In the instant case the Government alleged and proved that on twenty-two occasions defendant caused Local 286 unlawfully to receive non-dues payments from twenty-two separate employers. Causing the unlawful receipt from each employer was a distinct punishable offense.

■ Defendant contends that the court's instructions to the jury on 18 U.S.C.A. § 2(b) are plain error. We have read the instructions and, considered as a whole, they adequately and correctly informed the jury of the provisions of that Section.

■ In addition, defendant argues the court erred in refusing to give his proffered instruction concerning the credibility of witnesses. Again, inspecting the instructions as a whole, including the one dealing specifically with the credi-

bility of witnesses, we find that the jury was fairly and properly instructed.

Finally, defendant contends that the trial court grossly abused its discretion in imposing the challenged sentence on defendant. Relevant and controlling is our recent statement that the "punishment imposed was within that authorized by that statute and on the record and under the circumstances here involved it was not excessive. United States v. Coduto, 7 Cir., 284 F.2d 464, 469, certiorari denied 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed.2d 192; United States v. Chicago Professional Schools, Inc. et al., 7 Cir., 290 F.2d 285, concurring opinion [April 26, 1961]." United States v. Shaffer et al., 7 Cir., 1961, 291 F.2d 689.

We have considered all of the questions raised by defendant in this appeal and find no prejudicial error.

The judgment appealed from is affirmed.

Affirmed.