**UNITED STATES of America**

**v.**

**Dominic ALAIMO, Appellant.**

**No. 13614.**

United States Court of Appeals
Third Circuit.

Argued Dec. 4, 1961.

Decided Dec. 28, 1961.

Certiorari Denied March 19, 1962.
See 82 S.Ct. 829.

Joseph M. McDade, Scranton, Pa. (Henry C. McGrath, Scranton, Pa., on the brief), for appellant.

Phillip H. Williams, Sp. Asst. to U. S. Atty., Scranton, Pa. (Bernard J. Brown, U. S. Atty., Scranton, Pa., on the brief), for appellee.

Before GOODRICH, STALEY and GANEY, Circuit Judges.

GOODRICH, Circuit Judge.

The appellant was convicted [1] for violation of 29 U.S.C.A. § 186(b), (d), commonly known as the Taft-Hartley Act. Subsection (b) of the statute provides:

"(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."

Subsection (d) labels the forbidden conduct a misdemeanor and provides for a fine of not more than $10,000 or imprisonment for not more than one year, or both.

The Government charged thirty-four violations of the act in the twice-a-month receipt by the defendant of checks from the Knox Coal Company over a period beginning August 15, 1957, and ending December 31, 1958. The prosecution's theory was that these checks, while ostensibly made to an employee on the payroll of the company, were in fact paid to him as a representative of the company's employees and not, as appellant claims, as compensation for services. Payments of the latter type are exempted from the prohibition of the statute by Subsection (c).[2]

In urging reversal the first point the appellant makes is that the Government should have been compelled to elect which one of the thirty-four counts it chose to stand upon. The appellant's theory is that there were not thirty-four offenses committed here but only one. For this proposition he relies heavily upon the Supreme Court's decision in United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952). There the Court, through Mr. Justice Frankfurter, discussed the question whether a statutory provision defining an offense is directed toward a course of conduct or toward each performance of the forbidden act. The Court came to the conclusion that the Fair Labor Standards Act proscribes a course of conduct and not a series of individual offenses. The appellant also relies upon Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), in which the prosecution charged two violations of the Mann Act where the defendant in one trip took two women across a state line for immoral purposes. But, as the Court pointed out in that case, this was an improper endeavor to turn a single transaction into multiple offenses. In contrast to Universal C. I. T. and Bell, one may point to convictions for offenses against the narcotics statutes and against statutes dealing with the illicit manufacture, transportation and sale of untaxed alcoholic beverages, where a single act may constitute an offense against several prohibitions of the statute and be penalized accordingly.[3] It is, of course, true, as

---

1. United States v. Alaimo, 191 F.Supp. 625 (M.D.Pa.1961).

2. "(c) The provisions of this section shall not be applicable (1) with respect to any money or other thing of value payable by an employer to any representative who is an employee or former employee of such employer, as compensation for, or by reason of, his services as an employee of such employer * * *."

3. As to the narcotics statutes, see, e. g., Harris v. United States, 359 U.S. 19, 79

S.Ct. 560, 3 L.Ed.2d 597 (1959); Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Yancy v. United States, 252 F.2d 554 (6th Cir. 1958), aff'd by an equally divided Court, 362 U.S. 389, 80 S.Ct. 811, 4 L.Ed.2d 864 (1960). As to the liquor laws, see, e. g., Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927); Johnson v. United States, 276 F.2d 84 (4th Cir. 1960).

the Court points out in the Universal C. I. T. case, that the question whether the legislation looks toward penalizing a course of conduct or individual offenses is not always sun-clear. However, we see no reason for concluding that in this case a course of conduct is struck at. Here were individual receipts of money from the company over many months, and each time the defendant received a check from the company he was doing that which the statute forbade. We think the analogy to Patton v. United States, 42 F.2d 68 (8th Cir.), *conforming to the Supreme Court's answer to certified questions,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), is clear. There, the defendant was charged with several payments to a prohibition agent for "protection" in violation of the statute. The Court had no difficulty in adopting the Government's theory that the acts of the defendant in making payments every two weeks were separate violations. That case is directly in point, as are decisions having to do with the effect of bribery in more than one instance by the same defendant. See Biddle v. Wilmot, 14 F.2d 505 (8th Cir. 1926); cf. Lunsford v. United States, 200 F.2d 237 (10th Cir. 1952).[4]

We conclude without hesitation here that the Government's case was sound and that each unlawful payment to the defendant constituted a separate offense.

We think it quite reasonable that Congress should have provided for a separate punishment each time an employee representative places a price upon two weeks of labor peace, just as it did for each transaction in which prohibition agents were paid for two weeks' protection. Cf. Patton v. United States, supra. The fact that the prohibited act constitutes a misdemeanor instead of a felony we think has no bearing on the conclusion.

■ The appellant next charges that the court committed error in instructing the jury regarding the burden of proof. We think this point is not well taken. The jury was fully informed that the burden of the entire case rested upon the prosecution.[5] The defense was that the defendant was paid by the company for performing services as a watchman. That, of course, was a question of fact. The court stated the defense to the jury and left to it the question of deciding whether he was a watchman or whether he was not. Some questions were asked to the jury to the effect that if he was a watchman, what was he watching? These were put to get the jury to understand what the problem was. We do not find in them anything which modifies the court's instruction that the burden of the whole case was on the Government.

■■ The defendant's next point is that the court materially changed the in-

4. Other illustrative situations in which separate similar acts have been held to be punishable as individual offenses include Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916) (separate postings of letters pursuant to one fraudulent scheme are separate offenses); United States v. Guterma, 281 F.2d 742 (2d Cir.), cert. denied, 364 U.S. 871, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960) (each violation of Securities Exchange Act of 1934, §§ 13(a), 16(a), 15 U.S. C.A. §§ 78m(a), 78p(a), punishable as separate offense); United States ex rel. Simkoff v. Mulligan, 67 F.2d 321 (2d Cir. 1933) (sale and possession of counterfeit bill punishable separately); Rosso v. Aderhold, 67 F.2d 315 (5th Cir. 1933) (separate sales of narcotics by defendant to same buyer constitute separate offenses); People v. Stanford, 16 Cal.

2d 247, 105 P.2d 969 (1940) (each misappropriation pursuant to scheme of embezzlement constitutes separate offense).

The exact wording of the instruction was: "You begin your consideration of this case with the presumption that the defendant, although accused, is innocent. The burden of overcoming this presumption of innocence rests upon the government, and that burden never shifts thoughout the entire trial. This presumption remains in favor of the defendant throughout the trial until, if at all, during the course of your deliberation, it is overcome by credible evidence, sufficiently clear and strong, to convince you * * * beyond a reasonable doubt of the guilt of the defendant of the offenses charged."

dictment when he instructed the jury. Of course, that cannot be done. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). But this point is not well taken. What the defendant complained of was an explanation by the judge of the purpose of the statute. The explanation may or may not have been necessary. In any event, it constituted no change from what was charged in the indictment.

In his last two points, the appellant makes a double-barreled attack upon the conduct of the case by the trial judge. The Government, in its rebuttal testimony, introduced a statement by the defendant taken from the transcript of a grand jury proceeding in another case in the Southern District of New York. The effect of this admission was to disprove the truth of the defense that, during the period involved, the defendant was employed by Knox Coal Company.

Appellant's theory is that if the Government had this proof, which tended to show the falsity of the defense of employment, it should have brought this evidence into its case in chief and not held back the most devastating piece for rebuttal. It may be conceded that, even before defendant introduced any evidence, the probability was that the defense would be in the nature that the payments were bona fide compensation for employment. The prosecution could not know that to a certainty, however, in advance of the trial.

■ Regardless of this point, it is very clear that in general the order in which proof may be offered and received is a matter for the discretion of the trial judge. E. g., United States v. Montgomery, 126 F.2d 151 (3d Cir.), cert. denied, 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754 (1942); United States v. Hirsch, 74 F.2d 215 (2d Cir. 1934), cert. denied, 295 U.S. 739, 55 S.Ct. 653, 79 L.Ed. 1686 (1935). We do not see that that discretion was abused, and we think what the judge did here is supported by authority. See People v. Avery, 35 Cal.2d 487, 218

P.2d 527 (1950); 6 Wigmore, Evidence §§ 1869, 1873 (3d ed. 1940); cf. United States v. Lieblich, 246 F.2d 890, 895 (2d Cir.), cert. denied, 355 U.S. 896, 78 S.Ct. 271, 2 L.Ed.2d 194 (1957); Samish v. United States, 223 F.2d 358, 365 (9th Cir.), cert. denied, 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755 (1955).

■ The final attack upon this grand jury testimony by the appellant is that he was deprived of his constitutional rights in its reception. In this New York grand jury proceeding the appellant was a witness. He was not then charged with crime nor was there any indication, at that time, of an intention to charge him with a crime. He was advised of his rights before he started to testify. As the testimony proceeded he and the United States Attorney had a rather unhappy time. The witness was asked questions and he refused to answer a number of them, claiming the Fifth Amendment privilege. He was scolded by the United States Attorney for refusing to answer questions which the Attorney said were obviously not incriminating. All this not unusual difference of opinion does not bear upon the immediate question before us here. Prior to the time when the witness started to refuse to answer questions, he had already stated what his then occupation was, whether he had any other occupation than the dress business which he described, and, if so, when had it ceased. He answered, "Two years [ago]." This was the admission which became relevant in the trial of this case. It came after the defendant had been advised of his constitutional rights and before there was any objection by him to any question asked. The fact that a later discussion between him and the United States Attorney may have involved the same or similar questions does not change the fact that the admission used in the Government's case here was made without any objection whatever.

The contentions of the defendant have been carefully examined. We find no basis for reversal. The judgment of the district court will be affirmed.