UNITED STATES of America, Plaintiff-Appellee,

v.

Thomas H. KEEGAN, Defendant-Appellant.

No. 14190.

United States Court of Appeals Seventh Circuit.

April 2, 1964.

Rehearing Denied May 19, 1964.

Edward J. Calihan, Jr., Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., Frank E. McDonald, Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Defendant Thomas H. Keegan was charged in a 48-count indictment with violations of Section 302(b) of the Labor

Management Relations Act of 1947, 61 Stat. 157, 29 U.S.C.A. § 186(b).[1]

Following a trial by jury and a verdict of guilty on forty-six counts, defendant was adjudged to be guilty and sentence was imposed by the trial court. From this judgment defendant has appealed.

Count 1 of the indictment is typical of each of the forty-eight counts returned September 21, 1961, and is set out in the margin below.[2]

But for varying dates of alleged violations, the remaining forty-seven counts are unchanged throughout the indictment, except that counts forty-one through forty-eight do not allege a specific day; rather, they allege a specific month. Each count alleges that $200 was received from Interstate.

It was stipulated that during the years 1956 through 1961, and at all times pertinent to the period in the indictment, certain employees of Interstate Motor Freight System were employed as truck drivers, and were members of the Highway Drivers, Dockmen and Helpers, Meat Drivers and Helpers Union, Local 710, a division of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers Union. That, during these years, defendant was a business agent for Local 710 and that, during this period, Local 710 was a labor organization.

Counts twenty-seven and forty were dismissed on motion of the Government.

Defendant was sentenced to the custody of the Attorney General on February 19, 1963 for imprisonment for a period of one year on each of counts one, two, three, four and five of the indictment, and a fine of $1,000 and costs of prosecution were imposed for each of these counts. These sentences were to run consecutively and the fines were cumulative.

On each of counts six through twenty-six, twenty-eight through thirty-nine and forty-one through forty-eight, defendant was sentenced for a period of one year, these sentences to run concurrently with the sentence imposed on count five.

On appeal, defendant contends that certain rulings and instructions of the district court constituted prejudicial error, that the Government failed to prove

1. Section 186(b) and (d), Title 29 U.S.C.A., reads:

"(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value.

"(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both."

2. "The August 1961 Grand Jury charges:

"1. That at all times hereinafter mentioned, Interstate Motor Freight System, a corporation, hereinafter referred to as Interstate, maintained a truck terminal and offices in Cook County, Illinois, and was engaged in the trucking business as a common carrier of property by motor vehicle in interstate commerce, an industry affecting commerce, in the course of which business, the aforesaid Interstate Motor Freight System did transport goods and material by motor vehicle from Cook County, Illinois, to places outside the State of Illinois and did transport goods and materials by motor vehicle from places outside the State of Illinois to Cook County, Illinois;

"2. That at all times hereinafter mentioned certain of the employees of Interstate were employed as truck drivers and were members of the Highway Drivers, Dockmen and Helpers, Meat Drivers and Helpers Union Local 710, a division of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers Union, a labor organization hereinafter referred to as Local 710.

"3. That at all times hereinafter mentioned, Thomas H. Keegan defendant herein, was a representative and official of Local 710 and was a representative of Employees of Interstate as aforesaid, which said employees were members of Local 710, and which said employees were then and there employed in an industry affecting commerce; and

"4. That on or about October 2, 1956, at Cook County, Illinois, in the Northern District of Illinois, Eastern Division, Thomas H. Keegan, defendant herein, did unlawfully, wilfully and knowingly re-receive and accept from Interstate the sum of $200.00; in violation of Section 186(b), Title 29, United States Code."

an element of the offense and that counts forty-one through forty-eight were so vague as to violate the Sixth Amendment.

### I.

■ Defendant alleges that the court erred in not requiring the Government to elect a single count of the indictment upon which to prosecute and dismiss the remaining counts. Defendant argues that the statute does not make a separate crime out of each payment, but rather, it is a course of conduct which is prohibited, and therefore only one offense, if any is made out by the Government's case. Defendant relies upon, *inter alia*, Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); United States v. Universal Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); and United States v. Inciso, 7 Cir., 292 F.2d 374 (1961), cert. denied, 368 U.S. 920, 82 S.Ct. 241, 7 L.Ed.2d 135. We disagree.

The Third Circuit was presented with this same issue in United States v. Alaimo, 3 Cir., 297 F.2d 604 (1961), cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed. 2d 784. We agree with and adopt its reasoning, which is set out in the margin below.[3]

Defendant's reliance on our decision in United States v. Inciso, supra, is misplaced. There, defendant was charged in a 22-count indictment with violation of Section 186(b), each count naming a dif-

3. "In urging reversal the first point the appellant makes is that the Government should have been compelled to elect which one of the thirty-four counts it chose to stand upon. The appellant's theory is that there were not thirty-four offenses committed here but only one. For this proposition he relies heavily upon the Supreme Court's decision in United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952). There the Court, through Mr. Justice Frankfurter, discussed the question whether a statutory provision defining an offense is directed toward a course of conduct or toward each performance of the forbidden act. The Court came to the conclusion that the Fair Labor Standards Act proscribes a course of conduct and not a series of individual offenses. The appellant also relies upon Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), in which the prosecution charged two violations of the Mann Act where the defendant in one trip took two women across a state line for immoral purposes. But, as the Court pointed out in that case, this was an improper endeavor to turn a single transaction into multiple offenses. In contrast to Universal C.I.T. and Bell, one may point to convictions for offenses against the narcotics statutes and against statutes dealing with the illicit manufacture, transportation and sale of untaxed alcoholic beverages, where a single act may constitute an offense against several prohibitions of the statute and be penalized accordingly. It is, of course, true, as the Court points out in the Universal C.I.T. case, that the question whether the legislation looks toward penalizing a course of conduct or

individual offenses is not always sunclear. However, we see no reason for concluding that in this case a course of conduct is struck at. Here were individual receipts of money from the company over many months, and each time the defendant received a check from the company he was doing that which the statute forbade. We think the analogy to Patton v. United States, 42 F.2d 68 (8 Cir.), conforming to the Supreme Court's answer to certified questions, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), is clear. There, the defendant was charged with several payments to a prohibition agent for 'protection' in violation of the statute. The Court had no difficulty in adopting the Government's theory that the acts of the defendant in making payments every two weeks were separate violations. That case is directly in point, as are decisions having to do with the effect of bribery in more than one instance by the same defendant. See Biddle v. Wilmot, 14 F.2d 505 (8th Cir. 1926); cf. Lunsford v. United States, 200 F.2d 237 (10th Cir. 1952).

"We conclude without hesitation here that the Government's case was sound and that each unlawful payment to the defendant constituted a separate offense. We think it quite reasonable that Congress should have provided for a separate punishment each time an employee representative places a price upon two weeks of labor peace, just as it did for each transaction in which prohibition agents were paid for two weeks' protection. Cf. Patton v. United States, supra. The fact that the prohibited act constitutes a misdemeanor instead of a felony we think has no bearing on the conclusion." Id., 297 F. 2d at 605, 606.

ferent employer as payor. Thus, the issue of the same employer making more than one payment, with defendant being indicted for each payment, was not presented and determined in Inciso.

We hold that each payment by Interstate to defendant constituted a separate violation of Section 186(b).

## II.

■ Defendant alleges that the court erred in instructing the jury concerning the word "willfully" in Section 186(d) and that the Government failed to prove that defendant willfully violated the Act.

The court in instructing the jury with respect to willfullness charged as follows:

"The payment and receipt of money here must be willfully and knowingly done.

"The word 'willfully' means that the person knowingly and intentionally committed the acts which constitute the offenses charged.

"The word 'knowingly' imports only a knowledge of the existence of the facts in question, when those facts are such as to bring the act or omission within the prohibition of the law. The word does not require, as a part of its meaning, that there be any knowledge or awareness that such act or omission is in fact prohibited by law.

"The question of willfullness and knowledge is a matter for you to determine from all the facts and circumstances disclosed by the evidence.

"A person generally intends the natural consequences of his acts. However, willfullness and knowledge refer to a state of mind, and it is not possible to look into a man's mind and read the thoughts and knowledge that exist there at any given time.

"It is seldom possible to prove knowledge by direct evidence of what knowledge a person may have had at a particular time.

"The state of a person's mind, and the knowledge there existing, generally can be determined only by his acts, by his conduct, by his manifestations, and in determining the question of the willfullness, knowledge and intention of any defendant in this case, you should take into consideration not only the direct evidence bearing thereon, but all the facts and circumstances surrounding said defendant in connection with his acts, and the offices and positions he may have held.

"Consider the reasons for his conduct, and what he did."

Defendant tendered the following instruction which was refused by the court:

"Each of the counts in the indictment charge that the defendant 'did unlawfully, wilfully and knowingly receive and accept from Interstate the sum of $200.00.' These words, as used in the indictment, require proof of the awareness of the restrictions of Section 186(b) and (d), or a reckless disregard for that Section."

At the close of the court's instructions to the jury, defendant objected "to the Court's definition of 'willfully and knowingly' and the fact that the Court indicated, [sic] or failed to indicate, that these acts should be done with an evil or corrupt purpose or bad motive."

In United States v. Inciso, 7 Cir., 292 F.2d at 380, we held "that the term 'willfully violates' in Section 186(d) contemplates proof of an awareness of the restrictions of that section or a reckless disregard for that section." Defendant, agreeing with this holding, contends that the instruction failed to convey this definition to the jury. We hold otherwise.

The instruction in issue was patterned after the instructions given in United States v. Gibas, 7 Cir., 300 F.2d 836 (1962), cert. denied, 371 U.S. 817, 83 S.Ct. 32, 9 L.Ed.2d 58 and United States v. Inciso, supra.[4] The records in Gibas

---

4. These instructions do not appear in the reported opinions.

and Inciso reveal that the instructions given there were substantially the same as the one under consideration here.

While Gibas held that the receipt of money need not be "with an evil or bad purpose," supra 300 F.2d at 840, thus disposing of one of defendant's objections in this case, the issue concerning the adequacy of the definition of "willfully violates" was not raised in either case.

As stated in Inciso, supra, defendant need not be aware that his actions are a violation of § 186 and the jury was so instructed in the present case. The minimum proof to convict under § 186 is that defendant showed "reckless disregard for that section." United States v. Inciso, supra.

■ Whether or not defendant was reckless is subjective and difficult of proof. Reckless conduct, in this context, consists of two elements: knowledge of the material facts surrounding the proscribed conduct and knowledge that this conduct is likely to be illegal. See Hall, General Principles of Criminal Law 120 (2d ed. 1960).

The first element, knowledge of the facts, is to be determined by the subjective method, i. e., whether defendant had *actual* knowledge. The second element, while requiring subjective knowledge, may be proved by the objective method, i. e., whether a reasonable man would be aware that such conduct would likely be illegal. Hall, op. cit. supra 120, 155, 165.

Instructing the jury as to the first element of "reckless" and withholding from it the second element was done in United States v. Alaimo (D.C.M.D.Pa.), 191 F.Supp. 625 (1961) aff'd 3 Cir., 297 F.2d 604, cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784, as follows:

"A person who is a representative of employees employed in an industry affecting commerce may be held to have wilfully violated § 186(b) upon a showing that he received or accepted money from the employer of such employee (or from the agent of such employer) with knowledge

(1) that he was receiving or accepting money, and (2) that the person who was giving him the money was an employer of employees (or the agent of such employer) that he represented." Id. 191 F.Supp. at 627.

We hold that the jury was properly instructed on the term "willfully violates."

■ Defendant's other contention concerning the word "willfully" is that the Government failed in its proof of this element of the offense.

Several witnesses were called by the Government who testified concerning payments to defendant. Typical of such testimony was that of Arthur Holt.

Holt was office manager of Interstate during September, 1956, and was in charge of office personnel and office records.

Holt testified that one morning in September, 1956, defendant called him and asked him if he would be in the office the following morning. He said that he would and, after the conversation, he went over to a desk in which blank checks were kept and took out two drafts. They were each made out for $100 and payable to cash. They were made on or about October 2, 1956, and bore the signature of Holt.

Upon completing the drafts, Holt took them to a currency exchange, received $200 in cash and put the cash in a white envelope. He put the envelope in the center drawer of his desk.

The following morning he placed the envelope on the upper right hand corner of his desk. About 9:30 that morning defendant came into Holt's office and asked about problems, new members, or grievances. Defendant then took out a wallet and a small loose-leaf note book held together with a rubber band and placed them on top of the envelope containing the money. After defendant left the office, the wallet, note book and envelope were missing.

Holt testified to similar occurrences on other occasions and other witnesses testified to substantially similar incidents.

These constant payments and the manner in which they were made provided ample evidence from which the jury could find that defendant willfully accepted money with knowledge he was a representative of employees in an industry affecting commerce and that he received the money from the employer of such employees.

Viewing the evidence in a light most favorable to the Government, as we must do, we hold the Government sustained its burden of proving that defendant "willfully" violated § 186(b).

### III.

■ The Government, in its examination of witness Holt, produced, pursuant to Section 3500, 18 U.S.C.A., Holt's testimony before grand juries in Grand Rapids, Michigan and Chicago, Illinois. This testimony was offered to the court for an *in camera* inspection. The court, after conducting such an examination, ruled that the Government need not turn this testimony over to defendant.

On direct examination Holt testified, as stated previously in section II of this opinion, that he gave the money directly to defendant. On cross-examination, Holt stated that "it is possible" I told the grand jury in Grand Rapids and Chicago that I gave the money to the terminal manager.

Defendant thereupon moved for inspection of Holt's grand jury testimony, which motion was denied.

On appeal, defendant states that he demonstrated a "particularized need" for the grand jury testimony and the district court erred in not allowing him to inspect it.

The district court examined, *in camera,* the grand jury testimony in question and transmitted it, sealed, to our court. We have read the sealed testimony of Holt and agree with the district court that there are no material inconsistencies between Holt's testimony in the district court and his testimony before the grand juries.

We hold the district court did not err in refusing to permit defendant to examine the grand jury testimony in question. United States v. Micele, 7 Cir., 327 F.2d 222, 226–227 (1964).

### IV.

■ Counts forty-one through forty-eight charged defendant with accepting $200 from Interstate "on or about" July 1960, September 1960, November 1960, January 1961, March 1961, April 1961, May 1961 and July 1961. Defendant alleges these counts were so vague and indefinite as to be fatally defective and in violation of defendant's rights under the Sixth Amendment.

We do not reach this contention. The sentences imposed on counts forty-one through forty-eight were concurrent with each other and concurrent with count five.

We hold that count five can be sustained and therefore it is unnecessary to review counts forty-one through forty-eight. Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Cephas, 7 Cir., 263 F.2d 518, 519 (1959).

### V.

■ Defendant argues that the district court abused its discretion in requiring defendant to go to trial in view of defendant's physical condition.

On or about December 15, 1961, defendant had a heart attack and was confined to a hospital in Chicago, Illinois. Motion was made to continue the case on the ground that defendant was unable to proceed to trial. The court ordered, on December 19, 1961, that Dr. David Crosby of the United States Public Health Service examine defendant and that he secure all records and assistance from the attending doctor, Dr. Kushner, and a heart specialist, Dr. Yesnick.

The case was continued to January 2, 1962. On that date, Dr. Crosby's report indicated that, in his opinion, defendant was not able to stand trial at that time. Dr. Crosby suggested an additional examination in three months.

On or before April 9, 1962, defendant was examined by Dr. Remsberg of the

Public Health Service and the cause was continued for another three months. Dr. Remsberg recommended that the matter be re-evaluated in three months.

In June, 1962, the Public Health Service again examined defendant and the report stated that his condition had improved. The cause was then continued to October 15, 1962 for trial.

The doctors for defendant did not agree that his condition had improved and a motion was made on October 5, 1962 that defendant be examined by the United States Public Health Service. The case was continued to November 14, 1962 when a report was submitted by Dr. Imboden, Chief of the Medical Section of the United States Public Health Service. He found that defendant was unfit to stand trial.

Further hearing was held on November 16, 1962, at which time the Government suggested that in its opinion further examination by a cardiologist agreeable to defendant and the Government should be had. Pursuant to an agreement of the parties, Dr. Oglesby Paul, a cardiologist of Chicago was selected to make a further examination. It was agreed that if the examination should show a cardiac condition detrimental to defendant, the Government would dismiss.

Dr. Paul concluded his report as follows:

> "Although I have therefore concluded that * * * [defendant] may have coronary heart disease, it is not my belief that he is so incapacitated from this condition that a court trial would be detrimental to his physical condition or highly likely to bring on a heart attack. One can never predict precisely the outlook for any person with heart disease. However, it would be my opinion that the strain of a court trial should not prove to be an undue hazard to him from the point of view of his health."

The Supreme Court in Goldsby v. United States, 160 U.S. 70, 72, 16 S.Ct. 216, 40 L.Ed. 343 (1895) stated, "In a recent case we said: 'That the action of a trial court upon an application for continuance is purely a matter of discretion, not subject to review by this court, unless it be clearly shown that such discretion has been abused, is settled by too many authorities to be now open to question.' Isaacs v. U. S. [159 U.S. 487], 16 Sup.Ct. 51 [40 L.Ed. 229], and authorities there cited."

In view of the many continuances granted by the district court and the report of Dr. Paul, we can not say, after applying the above standard of review, that the district court abused its discretion in requiring defendant to proceed to trial.

## VI.

Defendant cites five instances where the district court restricted cross-examination and asserts that such restrictions constituted error.

We considered this question in United States v. Lawinski, 7 Cir., 195 F.2d 1 (1952). What we had to say there is applicable here. Id. 195 F.2d at 7, 8. In controlling the cross-examination of witnesses, the trial judge is permitted the exercise of a wise discretion and is in the best position to determine how far it should proceed.

We have carefully examined each alleged improper restriction and hold that the district court did not abuse its discretion and committed no reversible error in such rulings.

## VII.

Finally, defendant alleges error by the district court in instructing the jury, "I referred to some exceptions a few moments ago [29 U.S.C.A. § 186(c)] and I say in that connection that there was no evidence presented during this trial indicating that any payments allegedly made by Interstate Motor Freight System was of the nature of any of the statutory exceptions."

Defendant points to no evidence in the record and we have found none which

would support any of the exceptions listed in § 186(c).

We hold that the issue of exceptions was properly kept from the jury. United States v. Gibas, 7 Cir., 300 F.2d 836, 838–839 (1962), cert. denied 371 U.S. 817, 83 S.Ct. 32, 9 L.Ed.2d 58.

The judgment of the district court appealed from is in all respects affirmed.

Affirmed.