UNITED STATES of America, Appellee,

v.

Arthur J. FISHER, Appellant.

No. 140, Docket 31429.

United States Court of Appeals Second Circuit.

Argued Oct. 18, 1967.

Decided Dec. 15, 1967.

Certiorari Denied March 4, 1968.

See 88 S.Ct. 1047.

---

**6.** Conner v. Gardner, 4 Cir., 381 F.2d 497.

John S. Allee, Pierre N. Leval, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

William J. Corcoran, Corcoran & Brady, New York City, for appellant.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

On October 20, 1966 a two count information was filed in the United States District Court for the Southern District of New York against Arthur J. Fisher. Count one charged the appellant with having violated 29 U.S.C. § 186(b) [1] in

1. 29 U.S.C. § 186, in pertinent part, reads:

§ 186. Restrictions on payments and loans to employee representatives, labor organizations, officers and employees of labor organizations, and to employees or groups or committees of employees; exceptions; penalties; jurisdiction; effective date; exception of certain trust funds.

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof,

that during a four month period from March 1, 1964 to June 30, 1964, he had received and had accepted construction materials and equipment from an employer at a time when he was an officer, employee and representative of a labor organization which represented employees of that employer. Count two charged Fisher with having additionally requested and demanded from his employer certain bathroom fixtures and a heating boiler. The appellant was tried to a jury which found him guilty on count one and not guilty on count two. The district court suspended imposition of sentence and placed appellant on probation for one year. On appeal from that judgment Fisher contends first, that his acknowledged status as a constitutional officer of the union is insufficient to sustain a violation of the act in the absence of proof that he in fact represented the employees in dealing with the employer; second, that the information was duplicitous; third, that the evidence was insufficient to support the verdict; and fourth, that a statement made by appellant to a government agent was improperly admitted into evidence. We find no merit to any of these contentions, and we affirm the judgment entered on the jury verdict below.

Throughout the relevant period in 1964 Fisher was the Financial Secretary of Local 137, International Union of Operating Engineers, and continued in that office in 1965. As a constitutional officer of the union Fisher had responsibility for the collection of union dues and was authorized by the by-laws to sit on the executive board of the union. From 1963 forward, during the same period, Fisher was employed as a master mechanic by Camarco Contractors, Inc., a construction company which employed members of Local 137. As master mechanic he was responsible for supervising the repair and the maintenance of equipment used by his employer.

The Government introduced evidence that tended to show that during the period from March to June 1964, Fisher received from Camarco more than seventeen truckloads of material including sand, crushed stone, gravel, cement and concrete, as well as the use of concrete forms and a digging machine known as a 977 front end loader. Delivery of this equipment and material was made by Camarco employees to the construction site of Fisher's home in Lake Carmel, New York.

Appellant contended below that these transactions were legitimate purchases rather than unlawful gifts, and to counter this contention the Government showed that, contrary to its customary record-keeping practice of its sales, Camarco, as

which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

\* \* \* \* \*

(c) The provisions of this section shall not be applicable \* \* \* (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business \* \* \*.

(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

\* \* \* \* \*

to these Fisher transactions, prepared no sales slips or delivery tickets, made no entries in its sales journal, and prepared no invoices during 1964. A year later, in April or May 1965, only after an intensive investigation by the Government had begun, Fisher approached Camarco and asked to pay for this material. Following this request a bill was prepared after some difficulty, and Fisher paid it on May 10, 1965. The evidence indicated that Fisher asked that the bill be receipted "Paid in full" because that "was the way his attorney wanted it," and it was so receipted.

Fisher attempted to show that the material was sold to him and that the billing for the sales was delayed because Camarco's managers were forgetful and because they trusted him. He also sought to prove that the equipment was loaned to him in lieu of compensation due him for overtime. He produced testimony describing the nature of the duties performed by a master mechanic, and introduced, too, extensive testimony concerning his general reputation and position in the community.

■■■ We think it clear from the record, particularly when viewed in the light most favorable to the Government, that the evidence was sufficient for the jury to find that the transfer of material and equipment in 1964 was a gift and not a sale. Indeed, the appellant does not seem to challenge the sufficiency of the evidence on this feature of the proof. Rather, he suggests that his status as the employer's master mechanic dilutes in some way his position as an officer of the employees' union. This contention seems unrelated to the sufficiency of the evidence; if the nature of his position and the fact that his employer trusted him with supervisory responsibilities indicated that he was a good credit risk, that factor was but one of the factors in the

record before the jurors when they determined that the transactions were not sales on credit but were gifts. And, needless to point out, a labor union's officer is not excluded from the reach of the statute because he is also a supervisor for a company with which his union collectively bargains.

■■■ Appellant principally argues that, though he was an officer, namely the Financial Secretary, of the union, this fact does not make him an "officer" within the meaning of 29 U.S.C. § 186(b) unless an additional showing is made that he represented the union members in their dealings with the employer. Fisher contends that he had no power "to sell out the union" or to enter into "sweetheart" contracts, and that he did not hear or present employee grievances or negotiate on behalf of the employees with the employer. Congress in 1959 foreclosed this argument when it passed Section 186 to cover "any officer or employee" of a labor organization. Despite this clear statutory language Fisher argues by reference to the legislative history of the enactment that Congress intended by the statute to include within the coverage of the act only those persons who performed critical functions within the union whether they had a title or not. This is surely true, for the definition in 29 U.S. C. § 402 [2] of "officer," was drafted to include not only the constitutional officers of unions but also the others whether or not entitled "officers" who performed the functions of officers or were members of a union's executive board. In so expanding the proscription of the act there is no indication, however, that Congress had any intention to exempt persons who *were* constitutional officers, or to require the courts to examine into the extent of a person's responsibility after it was established that the person held union office. See II N.L.R.B. Legislative History of

2. Section 402(n) reads as follows:

§ 402 Definitions

For the purposes of this chapter—

\*　　\*　　\*　　\*　　\*

(n) "Officer" means any constitutional officer, any person authorized to per-

form the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.

\*　　\*　　\*　　\*　　\*

the Labor-Management Reporting and Disclosure Act of 1959, 1087–1096; Aron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv. L.Rev. 851, 892–3 (1960).

■ Section 186 has the clear purpose of declaring unlawful all payments or valuable gifts or loans made by an employer to an officer, employee, or representative of a labor organization which represents employees working for that employer. It is not necessary that we decide the far reaches of this section— there can be no doubt that this appellant, as the Financial Secretary and a member of the executive board of Local 137 was an officer of Local 137 within the terms of the act.

■ The appellant also argues that the information charging him with this offense under Section 186 was duplicitous in that he was charged with accepting material from Camarco at a time when he was an "officer, employee, and representative of a labor organization." He claims that this amounts to charging him with separate offenses in one count, inasmuch as Section 186 covers representatives in subsection (a) (1) and covers officers and employees in subsections (a) (2) or (a) (4). He points out that in United States v. Donovan, 339 F.2d 404 (1964) the Seventh Circuit held an indictment duplicitous on similar facts. We would have serious doubts about following *Donovan,* but we need not resolve the issue; here if there were any lack of clarity in the information it was corrected by the Bill of Particulars furnished to the defendant, which left no doubt that he was informed against in his capacity as an officer of the union. United States v. Ricciardi, 357 F.2d 91, 99 (2 Cir.), cert. denied, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 540 (1966).

Furthermore, the appellant has utterly failed to show any prejudice to his preparation from the alleged defect in the information. United States v. Gibson, 310 F.2d 79, 80 (2 Cir. 1962). The rules for testing duplicity are twofold: whether the information or indictment adequately informs the defendant of the nature of the charge so that he can prepare his defense; and whether in the event of a conviction a subsequent court will be able to determine the application of a double jeopardy defense. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). In this case there was no room for doubt about the nature of the charge or about the defendant's conduct that the Government would have to prove to substantiate that charge. Fisher's claim that the information was duplicitous cannot be sustained.

■ In his reply brief in this court the appellant claims that the admission into evidence of testimony concerning a statement made by him on April 8, 1965, at a Camarco contract job site to an agent of the Government during an interview in the agent's car violated appellant's constitutional rights. The agent testified that Fisher was not arrested, restrained or told that his physical activities were being restricted. Appellant was told that he and Camarco were under investigation, "that he did not have to make any statement, any statement he did make could be used against him in a court of law; prior to making a statement he had the right to consult an attorney of his choice." This warning complies with that approved in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, decided June 13, 1966, in every particular except that Fisher was not told that counsel could be appointed for him if he lacked funds to retain an attorney. But it would appear that no clear objection was made at trial to this particular omission from the warning, and inasmuch as Fisher was evidently intelligent and aware of his rights, and inasmuch as the Government claims he had always retained an attorney in this matter and was earning approximately $450 a week, the omission of this warning, a warning that had no direct applicability to him, see Miranda v. State of Arizona, supra at 473, n. 43, 86 S.Ct. 1602, is not so substantial an error that we should consider it, in the absence of an objection, as a clear error affecting this particular

appellant's substantial rights. F.R.Crim. P. 52(b). Thus as it would seem that the warning met the constitutional standard we need not decide whether Fisher was "in custody" at the time his statement was made.

Finally, in passing, appellant appears to object to alleged defects in the charge to the jury, but we are unable to find any merit whatsoever in these claims. The charge on wilfulness is challenged, but it was identical to that approved in United States v. Ricciardi, 357 F.2d 91, 100 (2 Cir.), cert. denied, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 540 (1966). At trial no objection was made to the portion of the charge relating to the central · issue, whether the transactions were gifts or purchases from Camarco; in fact, appellant seemed pleased with this part of the charge and used it in his summation. And, lastly, the charge on character evidence, apparently sought to be questioned, was proper.

The judgment of conviction is affirmed.