UNITED STATES of America,
Plaintiff-Appellee,

v.

David KAYE, Defendant-Appellant.

No. 76–1814.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1977.

Decided May 16, 1977.

Rehearing and Rehearing En Banc
Denied July 8, 1977.

---

Anna R. Lavin, Edward J. Calihan, Jr., Sherman M. Carmell, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., James P. Walsh, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and SHARP *, District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant David Kaye (hereinafter referred to as defendant) was convicted in a bench trial on a seventy-four count indictment of violation of 29 U.S.C. § 186(b)(1)[1] and 18 U.S.C. § 1962(c).[2] Defendant was sentenced to the custody of the Attorney General for two years on Count 1

* The Honorable Allen Sharp, United States District Court for the Northern District of Indiana, is sitting by designation.

1. 29 U.S.C. § 186 provides in part:

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

(c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; . . ..

(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

2. 18 U.S.C. § 1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1961 serves as the definitional section for § 1962(c). The relevant portions of § 1961 are as follows:

As used in this chapter—

(1) "Racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relat-

which charged a violation of 18 U.S.C. § 1962(c). Defendant was also sentenced to three years probation consecutive to the two year prison sentence for violation of 29 U.S.C. § 186(b)(1) on Counts 2 through 74. The complained of acts occurred between October 28, 1969, to on or about June 21, 1974.

Defendant raises for our consideration the following questions on appeal: 1) whether 29 U.S.C. § 186(b)(1) is an "indictable offense" so as to qualify as racketeering activity within the meaning of 18 U.S.C. § 1961; 2) whether the Government proved that defendant was involved in a "pattern of racketeering activity" as that term is defined in 18 U.S.C. § 1961(5); 3) whether defendant acted "in the conduct of" the union's affairs when he committed the acts for which he was convicted; 4) whether defendant was a representative of employees or an employee of Local 714; 5) whether defendant acted with the requisite intent; and 6) whether defendant's conduct falls within an exception pursuant to § 186(c)(1).

For the following reasons, we affirm the lower court's decision.

Briefly, the facts are as follows.

Defendant was a member of Local 714 of the Machinery, Scrap Iron Metal and Steel Chauffeurs, Warehousemen, Handlers, Helpers, Alloy Fabricators, Theatrical, Exposition, Convention and Trade Show Employees, International Brotherhood of Teamsters (hereinafter referred to as Local 714). Local 714 was the exclusive bargaining agent for temporary employees performing material handling and other work at trade shows, expositions, conventions and similar functions in the Chicago metropolitan area.

Defendant acted in several capacities for Local 714. First, defendant served as part-time business agent for Local 714 since 1971. Defendant received one hundred dollars a week for this work.

Defendant also acted as chief steward for the trade shows. Service contractors[3] contacted defendant in his capacity as chief steward to arrange for labor to perform tasks in relation to the trade shows and expositions. The position of chief steward did not receive compensation from either Local 714 or the service contractor. The position of chief steward was in no way connected to defendant's role as part-time business agent.

ing to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), or (D) any offense involving bankruptcy fraud, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States;

* * * * * *

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

* * * * * *

3. Service contractors provided labor to exhibitors in Chicago trade shows and expositions. Each service contractor operated under a collective bargaining contract with Local 714 which required the service contractor to obtain temporary employees from Local 714.

As chief steward, defendant selected union stewards for the trade shows. Defendant alone appointed the union stewards. If the work was to be conducted on one floor, one union steward would be appointed. If the work was conducted on separate floors or in different geographical locations, a union steward would be appointed for each work area. The position of union steward was separate from chief steward. The union steward was an employee of the service contractor who was paid at an hourly rate which was higher than the rest of the work crew.[4] The duties of the union steward included the following: protection of the jurisdiction of Local 714, handling payroll matters, checking crews in in the morning and checking crews out in the evening, investigating grievances, checking job safety, ensuring that work is done smoothly, and generally caring for the welfare of the men in the crew. Testimony by service contractors indicated that the union steward was expected to be physically at the job site. Absence from the job site was permitted with the approval of the employer as where the union steward was handling union business.

It was proper for defendant as chief steward to appoint himself to act as union steward for a particular job. Defendant's exercise of the right to appoint himself union steward led to the charges in this case. Generally stated, defendant was charged with accepting money from the service contractors for services as a union steward when defendant did not in fact provide such service. More specifically, defendant was charged in Counts 4 through 11 with placing himself on the payroll of service contractors as a union steward for trade shows held in Chicago when defendant was in fact absent from Chicago. In addition, defendant was also charged with being carried on more than one payroll as union steward for the same hours on the same day when the jobs were in different geographic locations or on more than one floor in a building.

1) Section 186(b)(1) as an "indictable" offense.

Defendant argues that 29 U.S.C. § 186(b)(1) cannot be the basis for a violation of 18 U.S.C. § 1962(c) since violation of § 186(b)(1) is a misdemeanor. Section 1962(c) proscribes one form of racketeering activity. Section 1961(1)(C) defines racketeering activity as:

any act which is indictable under Title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) . . .

Defendant argues that misdemeanors were not intended to be within the scope of the meaning of "indictable". Thus, defendant contends that the legislature erroneously included § 186 as a form of racketeering activity and that § 186 should be stricken from the statute.

The district court agreed with defendant that the language in § 1961(1)(C) is inconsistent but rejected defendant's contention that § 186 should be stricken from § 1961(1)(C). The lower court held:

The wording of Section 1961(c) is patently inconsistent. The Court concludes that either Congress made a simple drafting error when it used the word "indictable" or, alternatively, Congress did not intend to punish any act proscribed by Section 186. According to the notes following Section 1961, it was the intent of Congress that the provisions of the Organized Crime Control Act of 1970 be liberally construed to effectuate its remedial purpose. That being so, it is clear to the Court that, by inclusion of Section 1961(c), Congress intended those activities proscribed by Section 186 to be punishable under Section 1962 irrespective of their designation as misdemeanors or felonies.

■■■ This court does not find the language in § 1961(1)(C) to be inconsistent since a misdemeanor as defined in 18 U.S.C.

---

4. The evidence indicates that the hourly wage received by the union steward was from $.50 to $1.00 higher per hour than that received by the rest of the crew.

§ 1(2) [5] can properly be prosecuted either by way of indictment or information. See Fed.R.Crim.Pro. 7(a).[6] Thus, an act committed in violation of § 186(b)(1) is "indictable" as that word is used in § 1961(1)(C). There is no basis either in the legislative history of § 1961(1)(C) and § 186(b)(1) or in the statutory procedure authorizing use of an indictment for misdemeanor to support defendant's assertion that Congress erroneously included § 186 as a form of racketeering activity.[7]

2) "Pattern of racketeering activity".

■ Defendant was charged with engaging in a "pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c). Section 1961(5) defines pattern of racketeering activity:

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

Defendant relies on the definition of the term "pattern" found in United States v. White, 386 F.Supp. 882 (E.D.Wisc.1974), to support his argument that the Government failed to prove a "pattern of racketeering activity." The Government agrees with defendant that United States v. White, supra,

accurately sets forth the necessary relationship for proof of a "pattern of racketeering activity." The Government further asserts that defendant was shown to have engaged in acts which constitute a pattern of racketeering activity.

Judge Gordon in United States v. White, 386 F.Supp. at 883–4, examined the meaning of the term "pattern":

I conclude that the defendant's position is without merit. In common usage, the term "pattern" is applied to a combination of qualities or acts forming a consistent or characteristic arrangement. Use of the term "pattern" in connection with two racketeering acts committed by the same person suggests that the two must have a greater interrelationship than simply commission by a common perpetrator. The acts alleged in count I are part of a particular continuing criminal activity.

In my judgment, there is implicit in the statutory definition of "pattern of racketeering activity" a requirement that the government must prove such an interrelatedness beyond a reasonable doubt in order to obtain a conviction under § 1962(c). No claim is made that only organized crime figures commit the various crimes which are designated at § 1961 as "racketeering activity." Absent a showing of a "pattern" or interrelatedness of such activity, § 1962(c) could be

**5.** 18 U.S.C. § 1 provides:

Notwithstanding any Act of Congress to the contrary:

(1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony.

(2) Any other offense is a misdemeanor.

(3) Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense.

**6.** Federal Rule of Criminal Procedure 7(a) provides:

(a) Use of Indictment or Information. An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indict-

ment or by information. An information may be filed without leave of court.

**7.** Defendant relied on United States v. Universal C.I.T. Credit Corporation, 344 U.S. 218, 221–2, 73 S.Ct. 227, 97 L.Ed. 260 (1952), for the proposition that when a choice has to be made between two readings of a criminal statute, the broader alternative should not be chosen unless clear legislative intent supports such a choice. We need not employ that canon of construction in the present case since the statutory language which is here under examination is susceptible to "a commonsensical meaning." 344 U.S. at 221, 73 S.Ct. 227.

This court also notes that Congress expressly stated that the provisions of 18 U.S.C. § 1961 et seq. should be liberally construed to effectuate its remedial purpose. United States Code Congressional and Administrative News 1970, 91st Cong., 2nd Sess., P.L. 452 section 904, p. 4036.

used against the isolated acts of an independent criminal; such was not the intended target of the challenged statute. See also *United States v. Campanale*, 518 F.2d 352, 363 n. 32 (9th Cir. 1975), cert. denied, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638.

We find that defendant was shown to have engaged in continuous and related criminal activity over the four and one-half year period covered by his indictment.

**3) Conduct of Union Officers.**

█ Defendant asserts that if his actions were illegal, he was acting in the conduct of his own affairs and not in the conduct of Local 714's affairs. Defendant points to argument by counsel for the Government which indicated that both the service contractors and Local 714 were injured by defendant's conduct. Defendant contends that he should have been charged as an "enterprise" in his individual capacity.

Paragraph 11 of Count one which charged violation of § 1962(c) stated in part:

. . . defendant herein, being an employee of and associated with Local 714, an enterprise engaged in and the activities of which affect interstate commerce, unlawfully and knowingly conduct and participate, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

The language in Count one tracks the statutory language of § 1962(c), which makes it unlawful for any person to conduct or participate in the conduct of an enterprise's affairs through a "pattern of racketeering activity". "Enterprise" is defined in § 1961(5).

**8.** Counts 2 through 74 of this indictment allege in substantially the same language as follows:

"being a representative of employees employed in an industry affecting commerce and an employee of a labor organization, as that term is used in Title 29, United States Code, Section 186(a)(2), that is, a part-time Business Agent of Local 714, International Brotherhood of Teamsters, did . . . .

The evidence demonstrated that defendant was conducting or participating in the affairs of Local 714 when he committed the acts for which he was charged. Defendant as chief steward conducted Local 714's affairs in appointing himself as union steward, and accepting payments as union steward from union contractors for services which were not rendered. Thus, defendant's argument is without merit.

**4) Representative of employees or an employee of Local 714.**

█ Violation of § 186(b)(1) can be proven in the present case if payments were made to any representative of employees, § 186(a)(1), or to any labor organization, officer, or employee of a labor organization, § 186(a)(2). Defendant alleges that the Government failed to prove that defendant was a representative of employees of Local 714. First, defendant contends that proof that he was part-time business agent does not show representative status since his function as part-time business agent was in no way connected to his activity as chief steward or union steward. In addition, defendant also argues that his role as union steward did not constitute a representative status since the collective bargaining agreement provided that the union steward represented employees only if union representatives are not available.[8]

The Government contends that defendant was shown to be both a representative of employees and an employee of Local 714. The Government asserts that defendant was shown to be a representative of employees due to the nature of his role as union steward. The Government also argues that defendant's part-time position as business agent was adequate proof of his status as an employee of Local 714.

Defendant appears to argue that the indictment alleges only representative status based upon his position as part-time business agent of Local 714. Defendant asserts that "part-time Business Agent" limits "representatives of employees".

We find this argument to be without merit. The indictment did not define defendant's status as a representative of employees in terms of his position as part-time business agent.

For the following reasons, we agree with the Government.

First, evidence at trial demonstrated that defendant was a representative of employees due to his activity as union steward. The union steward represented the union in any jurisdictional problem occurring on the job, investigated grievances, ensured that job conditions were safe, checked in the men in the morning and checked the men out at night, ensured that union dues were paid up by checking union cards, and generally looked out for the welfare of the men. The record also indicated that service contractors expected that the union steward would be physically present at the job site unless excused to perform union duties. We believe that these activities qualified defendant as a representative of employees.[9] See *United States v. Ryan*, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956); *Brennan v. United States*, 240 F.2d 253 (8th Cir. 1957), cert. denied, 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 723; *Mechanical Cont. Ass'n. of Philadelphia v. Local Union 420*, 265 F.2d 607 (3rd Cir. 1959); *Korholz v. United States*, 269 F.2d 897 (10th Cir. 1959), cert. denied, 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352. We also note that defendant on August 17, 1976, was given an opportunity to raise questions concerning proposed findings of fact by the district judge. Defendant in the district court did not question the validity of the following finding of fact adopted by the lower court:

4. That David Kaye acted as a representative of those employees of Service Contractors named in the indictment who were members of Teamster Local 714 in matters of wages, hours and conditions of employment;

We also find that defendant's position as part-time business agent for Local 714 with a weekly salary of $100.00 supports a finding that defendant was an employee of a labor organization within the meaning of § 186(a)(2). "Section 186 has the clear purpose of declaring unlawful all payments or valuable gifts or loans made by an employer to an officer, employee, or representative of a labor organization which represents employees working for that employer." *United States v. Fisher*, 387 F.2d 165, 169 (2nd Cir. 1967), cert. denied, 390 U.S. 953, 88 S.Ct. 1047, 19 L.Ed.2d 1146.

In *Fisher, supra*, the defendant who was an officer of the union contended that he was not an officer within the meaning of § 186(b) since he had no power to sell out the union or enter into sweetheart contracts. The defendant in *Fisher* asserted also that he did not hear or present employee grievances or negotiate on behalf of employees with the employer. The court in rejecting this argument stated:

Congress in 1959 foreclosed this argument when it passed Section 186 to cover "any officer or employee" of a labor organization. *Fisher*, 387 F.2d at 168.

■ Thus, although defendant's position as part-time business agent did not relate to representation of employees and did not carry the power to sell out the union or enter into sweetheart contracts, defendant was nonetheless an employee covered by § 186.[10] We again note that defendant did

---

**9.** Although the collective bargaining contract between the service contractors and Local 714 is not part of the record on appeal, it appears that section 5 of the collective bargaining contract provided that the union steward was to be elected by the employees and would represent employees when union representatives were not available. The record indicates, however, that defendant as chief steward chose union stewards. Nonetheless, the collective bargaining contract reflects that the union steward acted as a representative of employees.

**10.** Legislative history also supports the proposition that the receipt of payments by any employee of a union without more constitutes a violation of § 186:

Section 111: Amends section 302(a), (b), and (c) of the Labor Management Relations Act, 1947, as amended, primarily for the purpose of clarifying an ambiguity which presently exists. Under present law it is illegal for an employer to pay or deliver anything of value to a representative of his employees. The amendments contained in this section would remove any doubt that all forms of bribery and extortion which might escape the provisions of existing law would be prohibited under pain of criminal penalties for conviction thereof. *The intent of these amendments to section 302(a) and (b) is to forbid any payment or bribe by an employer of anyone who acts in the interest of an employ-*

not challenge below the district court's finding of fact that defendant was an employee of Local 714.

■ We find to be without merit defendant's contention that *Fisher* requires a showing both that defendant was acting as a business agent when engaged in illegal conduct and that defendant was performing officer duties and functions. The court in *Fisher* only stated that even a person not formally an officer could fall within the broad definition of officer.

5) Willfulness.

■ The defendant claims that the Government failed to prove that he acted willfully as is required by § 186(d). This court in *United States v. Incisio*, 292 F.2d 374, 380 (7th Cir. 1961), stated:

> We hold that the term "willfully violates" in Section 186(d) contemplates proof of an awareness of the restrictions of that section or a reckless disregard for that section.

Defendant asserts that the Government did not prove either awareness of the restrictions of § 186 or a reckless disregard for that section.

For the following reasons, we believe that the Government proved that defendant acted with a reckless disregard for § 186.

This court further defined reckless conduct in the context of a § 186 violation in *United States v. Keegan*, 331 F.2d 257, 262 (7th Cir. 1964), cert. denied, 379 U.S. 828, 85 S.Ct. 57, 13 L.Ed.2d 37. The court there stated:

> Whether or not defendant was reckless is subjective and difficult of proof. Reckless conduct, in this context, consists of two elements: knowledge of the material facts surrounding the proscribed conduct and knowledge that this conduct is

likely to be illegal. See Hall, General Principles of Criminal Law 120 (2d ed. 1960).

> The first element, knowledge of the facts, is to be determined by the subjective method, i. e., whether defendant has *actual* knowledge. The second element, while requiring subjective knowledge, may be proved by the objective method, i. e., whether a reasonable man would be aware that such conduct would likely be illegal. Hall, op. cit. supra 120, 155, 165.

The court in *Keegan* in approving an instruction which gave only the first element of reckless conduct stated:

> Instructing the jury as to the first element of "reckless" and withholding from it the second element was done in *United States v. Alaimo* (D.C.M.D.Pa.), 191 F.Supp. 625 (1961) aff'd 3 Cir., 297 F.2d 604, cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784, as follows:
>
> > "A person who is a representative of employees employed in an industry affecting commerce may be held to have wilfully violated § 186(b) upon a showing that he received or accepted money from the employer of such employee (or from the agent of such employer) with knowledge (1) that he was receiving or accepting money, and (2) that the person who was giving him the money was an employer of employees (or the agent of such employer) that he represented." Id. 191 F.Supp. at 627.
>
> We hold that the jury was properly instructed on the term "willfully violates."

331 F.2d at 262.

In the present case, we have no doubt that defendant received money with knowledge that the funds were coming from employers (service contractors) of employees whom he represented. In addition, the

---

*er whether technically an agent or not and to forbid the receipt of any such bribe by any person, whether an individual, an officer or employee of a labor organization or a committee representing employees.* Payment to and receipt of such payments by any union officer or employee having the intent of influencing such officer or employee in respect to

any of his actions, decisions, or duties as a representative of employees or as such union officer or employee would also be made a criminal offense. (Emphasis Added)

United States Code Congressional and Administrative News 1959, 86th Cong., 1st Sess., P.L. 86–257, p. 2360.

second element was also satisfied since a reasonable man would be aware of possible illegality in serving on multiple payrolls for the same time period where the jobs were on different floors or in different geographical locations or accepting payment for work while out of town.

6) Exception under § 186(c)(1).

Defendant offers two theories to support his assertion that he falls within the exception of § 186(c)(1). First, defendant argues that he acted openly for the service contractors in "matters of labor relations or personnel administration." Defendant also contends that the money received by him was compensation for employee services.

The Government, on the other hand, contends that § 186(c)(1) is not applicable to this case. First, the Government argues that defendant was not paid 'for services rendered as an employee since he was paid for services as a union steward by multiple employers in separate locations for the same time periods. Since all of the employers stated that the union steward's physical presence was expected unless permission was given to be absent, the Government asserts that defendant could not have earned money received from the service contractors. The Government relies on *United States v. Motzell,* 199 F.Supp. 192 (N.J.1961), to support its position. In *Motzell,* the court considered the propriety of simultaneously working for multiple employers and concluded that such activity would not fall within § 186(c)(1): [11]

It is true that there are instances where a man can with all propriety be engaged in two separate employments at the one and the same time. The practice is, unfortunately, increasing due to our economy, where to make ends meet men have more than one employment. But these secondary employments are so-called after hour or week-end jobs, not performed at the one and the same time that the employee is performing work for the other employer.

It is, likewise, true that in this particular instance Cherbonnier was working for more than one company or client. But there is a great difference. Cherbonnier was being paid by his clients while Motzell, representing the employee members of the Union, was being paid by the Company employer.

If this practice (i. e., working for two employers) would be approved as not contravening the statute, where, along the line would it stop? Some would argue that one could indulge in such activities for two companies, some would say five, some would say ten. It is this Court's opinion that such a practice could and would constitute a form of extortion by a union upon a company or companies that the Act is designed to forbid. The Court therefore, concludes that the actions of the defendant, Motzell, as pertains to the second count, were proscribed by the Act and we, therefore, come to the question of whether such actions were wilful.

Secondly, the Government also asserts that the defendant did not act openly for service contractors in matters of labor relations or personnel administration. The Government claims that the evidence showed that union stewards acted on behalf of the union and employees and not on behalf of the service contractors.

■■■■ This court agrees with the Government that § 186(c)(1) cannot properly be invoked in this case. First, as we have already indicated, the union steward acted on behalf of Local 714 and employees of the service contractors. The union steward protected union jurisdiction, investigated grievances, ensured that job conditions were safe, checked union cards to ensure that dues were paid up, and generally looked out for the welfare of the men. Thus, although the employer may have benefited from the performance of these functions by the union steward, the union steward did not act on behalf of the employer in

---

11. The court in *Motzell,* however, found defendant to be innocent because he had not acted willfully.

matters of labor relations or personnel administration. In addition, we do not believe that the evidence showed that defendant received compensation by reason of his services as an employee. On the contrary, the Government properly pointed out that physical presence was repeatedly referred to as a requisite to performance of the role as union steward. We do not find that defendant who was out of town or was acting as union steward for multiple jobs in separate locations received "compensation for, or by reason of, his service as an employee." [12]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby affirmed.

[12]. Our conclusion that compensation received by defendant was not legitimate wages is supported in part by the following legislative history to § 186 which condemns union employees and representatives who act to further self-interest or personal profit:

For centuries the law has forbidden any person in a position of trust to hold interests or enter into transactions in which self-interest may conflict with complete loyalty to those whom they serve. Such a person may not deal with himself, or acquire adverse interests, or make any personal profit as a result of his position. The same principle has long been applied to trustees, to agents, and to bank directors. It is equally applicable to union officers and employees. The ethical practices code of the American Federation of Labor and Congress of Industrial Organizations states—

It is too plain for extended discussion that a basic ethical principle in the conduct of union affairs is that no responsible trade union official should have a personal financial interest which conflicts with the full performance of his fiduciary duties as a workers' representative.

After the McClellan committee hearings no one can dispute the simple fact that although the vast majority of union officials are honest and conscientious men, a small number have ignored this basic standard of conduct. No one would deny that the conduct is wrong. The wrongs should not be ignored by the Federal Government. The national labor policy is founded upon collective bargaining through strong and vigorous unions. Playing both sides of the street, using union office for personal financial advantage, undercover deals, and other conflicts of interest corrupt, and thereby undermine and weaken the labor movement. The Congress should check the abuses in order to foster the national labor policy. The Government which vests in labor unions the power to act as exclusive bargaining representative must make sure that the power is used for the benefit of workers and not for personal profit.

United States Code Congressional and Administrative News, 86th Cong., 1st Sess., P.L. 86–257, pp. 2330–31.