CATERPILLAR, INC., Plaintiff,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA and its affiliated Local Union 786, Defendants.

Civ. A. No. 1:CV–92–1854.

United States District Court,
M.D. Pennsylvania.

Dec. 8, 1995.

Elizabeth A. Dougherty, Bruce D. Bagley, McNees, Wallace & Nurick, Harrisburg, PA, Columbus R. Gangemi, Jr., Gerald C. Peterson, Winston & Strawn, Chicago, IL, for plaintiff.

Wendy L. Kahn, William W. Thompson, II, Washington, DC, Jordan Rossen, M. Jay Whitman, Leonard Page, Office of General Counsel Int'l Union (UAW), Detroit, MI, for International Union, United Auto, Aerospace and Agricultural Implement Workers of America, Local Union 786.

Robert R. Long, Jr., Assistant U.S. Attorney, Lewisburg, PA, Dean Lawrence Burrell, Special Litigation Branch, Margery E. Lieber, National Labor Relations Board, Gener-

al Counsel for Special Litigation, Washington, DC, for N.L.R.B.

## MEMORANDUM

CALDWELL, District Judge.

We are considering the parties' cross motions for summary judgment.

## I. BACKGROUND

Plaintiff, Caterpillar Inc. ("Caterpillar"), is engaged in the manufacture, sale, and distribution of heavy equipment at plants throughout the United States, including a facility in York, Pennsylvania. Defendants are the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and its Local Union 786 ("Local 786").[1] Since 1954, Caterpillar has recognized the UAW and Local 786 as the exclusive collective bargaining representative for certain of its employees at its York plant.[2]

Prior to 1973, the parties' collective bargaining agreements contained provisions specifically authorizing union representatives such as stewards, chief stewards, and committeemen to leave their jobs to handle grievance related matters, without loss of pay and while maintaining their status as full-time Caterpillar employees. In 1973, Caterpillar agreed to allow union committeemen and grievance committee chairmen to work full-time in their union capacities while still receiving wages and benefits from the company. These individuals are paid the wages and benefits earned on their last job with the company, but are considered to be on leave of absence. At Caterpillar's York facility, these individuals are Local 786's Grievance Committee Chairman and its Alternate Chairman (collectively "the Chairman").

1. We will, at times, refer to the Defendants jointly as "the Union."

2. Caterpillar also recognizes the UAW and its respective affiliated Local Unions as the exclusive collective bargaining representative at many of its other plants.

The parties' most recent collective bargaining agreement expired on November 30, 1991. The UAW and many of its locals subsequently began a strike against Caterpillar, although members of Local 786 did not participate. The striking employees eventually returned to work without a contract. On October 30, 1992, Caterpillar notified the UAW that it would stop paying the Chairman, and the other grievance committee chairs at other plants, as of November 16, 1992. In the letter informing the UAW of its decision, Caterpillar stated that

> Indeed, one may even question the legality of such payments. Therefore, effective November 16, 1992, and continuing until a new agreement is reached, Caterpillar no longer intends to subsidize the UAW by paying wages to or by providing coverage at no cost under the Group Insurance Plan for the Union's various chairmen of grievance committees ...

[Letter from J.L. Brust to Elliott Anderson of 10/30/92]. On November 17, 1992, the UAW responded by filing an unfair labor practice charge with NLRB offices in Baltimore, Maryland, and Peoria, Illinois, alleging a violation of §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158.[3]

On December 21, 1992, the NLRB notified the parties that, if no settlement was imminent, the NLRB would file a similar complaint against Caterpillar. The next day, Caterpillar filed the instant action, seeking a declaration that the payments to the Chairman are illegal under § 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186.

Because of the pending NLRB proceedings, on May 24, 1993, this action was stayed. Thereafter, the UAW and its locals, including Local 786, began another strike against Cat-

3. These provisions require an employer to bargain in good faith with his employees' representative before unilaterally changing a term or condition of employment. *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539, 542–43, 108 S.Ct. 830, 832, 98 L.Ed.2d 936, 943 (1988).

erpillar.[4] On January 31, 1995, NLRB Administrative Judge James L. Rose issued a Decision and Recommended Order dismissing the Union's unfair labor practice charges. He concluded that the Union is responsible for the duties performed by the Chairman and decides the manner in which they are performed. He then determined that Caterpillar's payment of wages and benefits to the Chairman violated sections 8(a)(3) and 8(b)(2) of the NLRA.[5] Although the Administrative Judge's recommendation is not a final decision of the NLRB, because of the pendency of this case since 1992, we lifted the stay and both parties filed motions for summary judgment.

## II. *LAW AND ANALYSIS*

### A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (emphasis in original) (citation omitted). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (internal citations omitted).

### B. *Section 302*

 Plaintiff seeks a declaration that payments to the Chairman are unlawful under section 302(a) of the LMRA. That section provides that

It shall be unlawful for any employer ... to pay, lend, deliver, or agree to pay, lend, or deliver, any money or other things of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents ... any of the employees of such employer who are employed in an industry affecting commerce;

. . . . . .

29 U.S.C. § 186(a). It is undisputed that Caterpillar is an employer in an industry that affects commerce and that the Chairman is a representative of Caterpillar's employees. Thus, it would appear that Caterpillar's payment of his wages would be unlawful. However, section 302(c) of the LMRA provides that

[t]he provisions of this section shall not be applicable (1) in respect to any money or

---

4. Recently, the UAW ordered the striking workers back to work, notwithstanding the fact that no new agreement has been reached.

5. He also noted that "I believe that payments to the chairman and full-time committeemen raise a serious issue under Section 302. Even if benign, Articles 4.6 and 4.7 shift the financial responsibility for certain full-time union officials from the Union to [Caterpillar]." [Decision at 7]. However, he declined to reach the issue of whether the payments violated section 302 because they were facially violative of section 8 of the NLRA.

other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, who is also an employee or former employee of such employer, as compensation for, or by reason of, his services as an employee of such employer.

29 U.S.C. § 186(c).[6] Defendants argue that the Chairman is an employee of Caterpillar, that the payments are for his services to Caterpillar, and that the payments are permissible under section 302(c)(1).[7]

The Third Circuit addressed these issues in *Trailways Lines v. Trailways, Inc. Joint Council,* 785 F.2d 101 (3d Cir.), *cert. denied,* 479 U.S. 932, 107 S.Ct. 403, 93 L.Ed.2d 356 (1986). In that case, the employer instituted an action against the union seeking a declaration that a section of the parties' collective bargaining agreement, which required the employer to make contributions to a joint union-management pension trust fund for employees who took leaves of absence to accept full-time positions with the union, violated section 302. *Id.* at 102. The court first noted that "[t]here is no dispute that Trailways' payments to the Pension Trust Fund

would be prohibited by § 302(a) unless they fall within one of the express statutory exemptions provided by section 302(c)...." *Id.* at 103–04. Similarly, there is no dispute in this case that the payments to the Chairman would violate section 302(a) unless one of the enumerated exceptions apply.

The defendant in *Trailways* argued that two exceptions, section 302(c)(1) and section 302(c)(5), were applicable there.[8] The court held that the exception in section 302(c)(5) was inapplicable because the employees were not "current employees" of the employer, but were instead "former employees" of the employer who had become current employees of the union. *Id.* However, the court could not use the same analysis with respect to section 302(c)(1) because that exception applies to "an employee *or former employee* of such employer, as compensation for, or by reason of, his service as an employee of such employer." 29 U.S.C. § 186(c)(1) (emphasis added).[9] In addressing the claimed exemption of the former employees, the court found that "clearly the statute contemplates payments to former employees for *past* services actually rendered by those former employees *while they were employees of the company.*" *Id.* at 106 (emphasis in original). Because

---

**6.** The parties disagree over who has the burden of proof on these issues. Plaintiff maintains that the payments are presumptively improper under section 302(a), and that the Defendants carry the burden of establishing that one of the affirmative defenses of section 302(c) is applicable. Defendants argue that Plaintiff must establish that the payments are improper, and, in doing so, show that none of the enumerated exemptions of section 302(c) apply. Although it appears that Defendants must prove that one of the exceptions of section 302(c) applies, our decision would be unaffected regardless of which party had the burden of proof. *See United States v. Alaimo,* 191 F.Supp. 625, 626 (M.D.Pa.), *aff'd,* 297 F.2d 604 (3d Cir.1961), *cert. denied,* 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962) ("It is incumbent upon one who relies upon an exception [in section 302(c)] to set it up and establish it").

**7.** Defendants also advance three other defenses to Plaintiff's claim. However, each lacks merit. First, Defendants argue that Plaintiff's claim is moot because the collective bargaining agreement which called for the payments in question has expired. There is currently no contract between Caterpillar and the Defendants, although it appears that the striking employees have just been ordered by the Union to return to work.

The parties are negotiating a new contract and this issue is, undoubtedly, part of that process and is not moot. *See, e.g., American Comm. Barge Lines Co. v. Seafarers Intern. Union,* 730 F.2d 327, 332–33 (5th Cir.1984) (discussing mootness of proposed injunction against strike and bargaining demands).

Next, citing a similar provision of the NLRA, Defendants assert that a six-month statute of limitation is applicable to Plaintiff's claim, *see* 29 U.S.C. § 158(b)(6), and/or that the doctrine of laches prohibits Plaintiff's claims. However, we do not read Plaintiff's complaint to seek redress for past payments. Instead, it seeks a declaration that future payments are unlawful under section 302. Thus, the statute of limitations and/or doctrine of laches are inapplicable.

**8.** Section 302(c)(5) is not applicable in the instant case.

**9.** Plaintiff misrepresented the holding of *Trailways* when it asserted that the court, in construing the exemption in § 302(c)(1), "held the exemption applies only to *current* and *active* employees of the employer." [Pl.'s Mem. in Opp'n to S.J. at 7].

there was no evidence that the payments were for past services actually performed by the former employees for the employer, the court held that the section 302(c)(1) exception did not apply. *Id.*

Here, we must determine two related issues: (1) whether the Chairman is a current "employee" of Caterpillar; and (2) whether the payments to the Chairman are for services rendered to Caterpillar.[10]

### 1. Is the Chairman a current and active employee of Caterpillar?

"[T]he issue of the status of employees is not solely a question of contract. Rather, it is a question of law turning also on the degree of control exercised by the employer over the employee, and on a determination of for whose benefit the employee is performing his services." *Id.* at 106 (citation omitted).[11] In considering the facts presented, the court in *Trailways* held that "[u]nder either of these tests, the individuals here cannot be considered [the employers'] employees while on leave, since they are in no way controlled by [the employer], nor do they perform any services for the benefit of [the employer]." *Id.* at 107.

Plaintiff argues that the decision in *Trailways* mandates judgment in its favor because it is undisputed that the Chairman is an employee of the Union, and not an employee of Caterpillar. Defendants maintain that the Chairman is an employee of Caterpillar. Applying the tests set forth in *Trailways,* we conclude, as a matter of law, that the Chairman is not a current employee of Caterpillar.

The first test for employee status concerns the degree of control exercised by the employer over the employee. *Trailways,* 785 F.2d at 106. In support of their argument that the Chairman is an employee of Caterpillar, Defendants assert that his

> duties paid by Caterpillar revolved completely around the Caterpillar workers and were closely controlled. The functions for which Caterpillar paid and did not pay, the method of selection of the positions, the place where the individuals were to work, the amount Caterpillar paid (tied to the individual's last Caterpillar position prior to assuming the full-time Chairman and Alternate position) are all set forth in great detail in the CBA. In addition, the full-time Chairman and Alternates were in frequent contact in person and by phone with Caterpillar's managers and foremen, and the York Chair spent an average of one and one-half days per week at the plant. When the York Chair performed Union activities not identified by the collective bargaining agreement as resolving around grievance and related problem-solving, he was "called out" and not paid by Caterpillar. This frequently resulted in Caterpillar paying him for less than 46 hours in a week.

[Defs.' Br. in Opp'n to S.J. at 10]. Further, Defendants argue that the Chairman: was assigned to a particular shift and required to get permission from Caterpillar to change shifts; had to notify Caterpillar if he was to be late, leave early, or take sick time or vacation; received pay checks identical to other employees; was classified as an active employee for other purposes; and turned in weekly time cards.[12]

Even assuming Defendants' assertions are true, they have no impact on the issue of who controlled the Chairman's work and the manner in which that work was performed. Each of the facts set forth by Defendants is related to Caterpillar's payment of the Chairman's wages. In order to pay the Chairman,

---

10. We recognize that, technically, we need not determine whether the Chairman is an "employee" of Caterpillar, since section 301(c)(1) applies to both current and former employees. However, as set forth below, resolution of this issue facilitates the determination of whether the Chairman is being paid for services rendered on behalf of Caterpillar.

11. Defendants assert that *"Trailways'* reliance on these factors to determine 'present employee'

status was rejected in *NLRB v. Wyandotte Corp.,* 798 F.2d 849 (5th Cir.1986)." [Defs.' Br. in Opp'n to S.J. at 5 n. 2]. Assuming *Wyandotte* did reject *Trailways,* we are bound to follow controlling Third Circuit law.

12. Defendants do not identify the source of this "evidence" other than a reference to "Orndorff Declaration."

Caterpillar had to know what hours he worked, when he was on vacation, on sick leave, and when he was performing duties outside those contemplated by the collective bargaining agreement. This does not mean, however, that he was an "employee" of Caterpillar. Otherwise, any company that paid an individual's wages, and required an accounting of the hours worked, would be deemed an employer of that individual.

Caterpillar does not exercise sufficient control over the Chairman to classify him as its employee because Caterpillar did not control the tasks that the Chairman performed, or the manner in which they were performed. At the NLRB Hearing, Orndorff testified that during the time he was acting as Grievance Committee Chairman, he did not receive job assignments from Caterpillar. [NLRB Hearing at 4467].[13] Further, in discussing his duties as Chairman, both in his deposition and his testimony, Orndorff never indicated that he had duties other than those directly related to the Union. At the NLRB Hearing, Judge Rose questioned Orndorff as follows:

Q: Now, how many of those hours did you actually spend at the plant?

A: Probably a day a week I actually spent in the plant.

Q: Eight hours?

A: Yes.

Q: And the rest of the time was in the Union Hall?

A: Working out of the Union Hall or—yes, sir.

Q: Okay. Now tell me, did the Company know what you were doing when you were at the Union Hall?

A: I wouldn't see how they would know everything I did. No.

Q: You didn't have a Company supervisor or anybody at the Union Hall?

A: Nobody from the Company was at the Union Hall, no, sir.

Q: So they would have no way of knowing what you did?

A: I wouldn't have any—no, they wouldn't have any that I know of.

Q: They wouldn't know whether you were working on grievances or working on Union business or doing crossword puzzles or what?

A: Absolutely.

Q: Is that correct?

A: I would say, yes.

[NLRB Hearing at 4500–01]. Additionally, Orndorff testified that, to his knowledge, no one from Caterpillar ever went to the union hall to check on his work as chairman. [Orndorff Dep. at 43–44]. In response, Defendants have not identified any evidence that indicates that the Chairman's work was controlled by Caterpillar and we conclude that Caterpillar did not exercise control over the Chairman's activities.

The second test for employee status is "for whose benefit the employee is performing his services." *Trailways,* 785 F.2d at 106. Defendants suggest that Caterpillar receives the benefit of the Chairman's employment because the processing of grievances is "integral" to an employer. However, it is clear that the Chairman performs his services for the benefit of the Union. In his deposition, Orndorff testified as follows about his position:

Q: What were your duties?

A: My duty is represent the members of Local 786.

Q: In what capacity?

A: As their chairman.

Q: As chairman of the grievance and bargaining committee; is that correct?

A: Yes, sir.

Q: Okay. What does then—what do you do as the chairman of the grievance and bargaining committee as of November 15, 1992?

A: Try to interpret and enforce the contract on behalf of members of Local 786.

Q: Anything else?

A: I don't understand what you mean.

Q: Did you do anything else in carrying out your duties?

---

13. Specifically, when asked whether the company had assigned job duties, Orndorff stated that "I worked out of the Union Hall. That's—I had my privileges under 4.6." *Id.*

A: A lot of things that were not spelled out there as far as joint things between the company and union that, again, were in the best interest of the members of Local 786.

[Orndorff Dep. at 27–28]. It is clear from the Chairman's testimony that his position is intended to, and does in fact, substantially benefit the Union. While Caterpillar may indirectly benefit in some fashion from the Chairman's activities, there can be no dispute that it is the Union and its members that receive the direct and significant benefit from his work. *See Reinforcing Iron Workers Local Union 426 v. Bechtel Power Corp.,* 634 F.2d 258, 261 (6th Cir.1981); *United States v. Kaye,* 556 F.2d 855, 862 (7th Cir), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

On this basis, we conclude that the Chairman is not a current and active employee of Caterpillar for purposes of the exemption in section 302(c)(1).

2. Are the Chairman's wages paid as compensation for services rendered to Caterpillar?

The paramount question is whether the Chairman's wages are paid for services rendered to Caterpillar. The fact that the Chairman is not a current employee of Caterpillar mandates that, for the payments to be legal, they must have been payment for services rendered while he was an employee of Caterpillar. *Trailways,* 785 F.2d at 107. Here, as in *Trailways,* nothing in the record could support such a conclusion.[14]

Defendants argue, citing *Communications Workers of America v. Bell Atlantic Network,* 670 F.Supp. 416 (D.D.C.1987), that be-

cause the Chairman's wages are based upon his last position with the company, those payments are for services rendered on behalf of Caterpillar. In *Communications Workers,* the court distinguished *Trailways* on this ground because the payments in *Trailways* were based on the former employee's position with the union. *Id.* at 421–22. However, we find the distinction made in *Communications Workers* unpersuasive. The fact that the Chairman's wages are calculated on the basis of his last position with the company does not, in any way, mean that those wages are for services rendered while he was an active Caterpillar employee. In *Trailways,* the court determined that the payments were improper because there was no evidence that they were in recognition of the employee's past services to the employer. The record here is devoid of evidence that the Chairman's wages are for services rendered while he was employed by Caterpillar.[15]

C. *Conclusion*

We hold, as a matter of law, that the Chairman is not a current employee of Caterpillar because Caterpillar does not exercise sufficient control over his duties and does not significantly benefit from the performance of those duties. Further, the payments to the Chairman are not for services rendered while he was an employee of Caterpillar. Accordingly, the exemption of section 302(c)(1) is inapplicable, and any payments made by Caterpillar to the Chairman are unlawful under section 302(a) of the LMRA.[16]

We will issue an appropriate Order.

---

**14.** Even if we determined that the Chairman is a current Caterpillar employee, we would still conclude, as a matter of law, that the wages he receives are not for services rendered for Caterpillar. This is true because the evidence shows that, as in *Trailways,* the Chairman performed *no functions* on behalf of Caterpillar. Rather, his job was to act "in the best interest" of the Union. Thus, payment to the Chairman is impermissible whether or not he is classified as a current employee of Caterpillar.

**15.** In their reply brief, Defendants state that "[w]hile Defendants should prevail under *Trailways,* if *Trailways* could be read to prohibit the payments in this case, *Trailways* should be over-

ruled to that extent." [Defs.' Reply Br. at 12–13 n. 16]. This statement illustrates the only argument that Defendants can and do make here: *Trailways* was wrongly decided. However, even if we were inclined to agree, which we are not, we are without power to overrule a decision of the Third Circuit.

**16.** Defendants argue that the goals of section 302 are not furthered by holding that these payments are unlawful, and that payments of this sort are commonplace today and have been so for many years. Admittedly, the purpose of section 302 was to "prevent bribery, extortion, shakedowns, and other corrupt practices." *Communications Workers,* 670 F.Supp. at 424 (citing H.R.Rep. No.

## ORDER

AND NOW, this 8th day of December, 1995, it is ordered that:

1. Plaintiff's motion for summary judgment, filed October 19, 1995, is granted.

2. Defendants' motion for summary judgment, filed October 19, 1995, is denied.

3. Any payment of wages by Caterpillar to the Chairman or Alternate Chairman of the Grievance Committee of Local 786 in the circumstances of this case would violate section 302(a) of the Labor Management Relations Act, 29 U.S.C. § 186(a).

4. The Clerk of Court shall enter judgment in favor of the Plaintiff and against Defendants, and close this file.

286, 91st Cong., 1st Sess. 1–2, *reported in* 1969 U.S.Code Cong. & Ad.News at 1159–60). Further, we recognize that our decision could have far reaching effects on not just these parties, but on other employer/labor union relationships. However, in applying the plain language of section 302, as defined by the Third Circuit in *Trailways*, we must conclude that the proposed payments are unlawful.